IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

SEP 0 8 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

| | |
|---|---|
| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>AMERICAN ACADEMY OF ALLERGY, ASTHMA & IMMUNOLOGY *et al.*,<br><br>*Defendants*. | Civil Action No. SA-14-CV-35-OLG |

**ORDER**

On this date, the Court considered Plaintiffs' motion to compel Defendants' compliance with Court-ordered discovery. Docket No. 87. For the following reasons, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART.

**I. Background**

Plaintiffs United Biologics, LLC d/b/a United Allergy Service ("UAS") and Academy of Allergy & Asthma in Primary Care ("AAAPC") filed suit against various physicians board-certified to practice allergy testing and allergen immunotherapy, their businesses, and the trade organizations with which they are affiliated. *See* Docket No. 71. The defendant trade organizations include the American Academy of Allergy, Asthma & Immunology ("AAAAI") and the Joint Council of Allergy, Asthma & Immunology ("JCAAI").

In their complaint, Plaintiffs generally assert that Defendants violated antitrust laws and committed related common law offenses by restricting competition in the market for allergy testing and allergen immunotherapy. *See id.* Plaintiffs complain, among other things, that

Defendants manipulated the market for allergy care by persuading, enticing, or coercing third-party health care payors not to do business with Plaintiffs or their members. *See id.* ¶ 106.

On March 6, 2014, Plaintiffs moved for expedited discovery prior to a hearing on their motion for preliminary injunction. Docket No. 30. On March 20, 2014, the Court granted Plaintiffs' request in part and ordered Defendants to respond to one narrowly tailored interrogatory and two narrowly tailored requests for production. Docket No. 60. Specifically, the Court allowed Plaintiffs to propound an interrogatory requesting Defendants identify all relevant communication between JCAAI and Aetna regarding a change in Aetna's allergen immunotherapy dosage reimbursement policy. *See* Docket No. 60, at 8; Docket No. 30, Interrog. No. 3; Docket No. 12, Ex. F-1. The Court also allowed Plaintiffs to propound a request for production requiring Defendants to produce a copy of all documents identified in the interrogatory. Docket No. 60, at 8; Docket No. 30, Req. for Prod. No. 2. Finally, the Court allowed Plaintiffs to propound a request for production requiring Defendants to produce a copy of all materials relating to a webinar given on September 10, 2013, co-sponsored by JCAAI and AAAAI. *See* Docket No. 60, at 8; Docket No. 30, Req. for Prod. No. 3.

On May 16, 2014, Plaintiffs moved to compel production of responsive documents withheld or redacted by JCAAI and AAAAI under claims of privilege. Docket No. 87. Defendants responded with affidavits and evidence supporting their claims of privilege. Docket No. 91. Plaintiffs replied. Docket No. 94. On June 19, 2014, the Court ordered Defendants to submit for *in camera* review all documents redacted or withheld as privileged and to file supporting privilege logs. Defendants JCAAI and AAAAI complied. The privilege logs show that JCAAI and AAAAI claim attorney-client, common legal interest, and/or work product privileges for all of the documents withheld or redacted. Additionally, AAAAI notes on its

privilege log that it has redacted material outside the scope of the Court-ordered discovery requests and for "HIPPA Compliance and Personal Privacy Issues."

## II. Legal Standard

The party asserting a privilege exemption from discovery must demonstrate its applicability. *See* FED. R. CIV. P. 26(b)(5); *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). The privileged claimant's burden extends to preliminary facts showing that the matter is eligible for protection. *In re Santa Fe*, 272 F.3d at 710 n.7; *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473–74 (N.D. Tex. 2004). Because the assertion of privilege inhibits the search for truth, courts generally construe privilege exemptions narrowly. *See Trammel v. United States*, 445 U.S. 40, 50 (1980); *In re Santa Fe*, 272 F.3d at 710; *Navigant Consulting*, 220 F.R.D. at 473 (N.D. Tex. 2004).

"[The attorney-client privilege] protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Only communications made "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding" are privileged. *United States v. Harrelson*, 754 F.2d 1153, 1167 (5th Cir. 1985) (internal citations omitted); *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975). Communications with an attorney made for the purpose of obtaining "business or technical advice or management decisions" are not privileged. *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citing *Navigant Consulting*, 220 F.R.D. at 474).

The party asserting the attorney-client privilege must prove that waiver by breach of confidentiality did not occur. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985); *Perez v. Perry*, SA-11-CV-360-OLG-JES-XR, 2014

WL 3359324, at *1 (W.D. Tex. July 9, 2014). Disclosure of attorney-client communications to a third-party lacking a common legal interest will result in a waiver of the privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992). However, "communications between co-defendants in actual litigation and their counsel . . . [and] communications between *potential* co-defendants and their counsel" are protected under the common legal interest extension of the attorney-client privilege. *In re Santa Fe*, 272 F.3d at 710 (emphasis in the original). For communications between potential co-defendants and their counsel to qualify for attorney-client protection, there must exist "a palpable threat of litigation at the time of the communication." *Id.* at 711.

Work product protection is governed by Federal Rule of Civil Procedure 26(b)(3). The Rule protects work product revealing an attorney's mental processes. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). The protection is broader in scope than the attorney-client privilege because the protection encompasses much that has its source outside client communications. *See Stoffels*, 263 F.R.D. at 412. However, similar to a determination of attorney-client privilege, the determination of whether a document falls within the work product protection is whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (internal quotation marks omitted); *see* FED. R. CIV. P. 26(b)(3); *Stoffels*, 263 F.R.D. at 412.

### III. Discussion

The Court has carefully reviewed JCAAI's and AAAAI's privilege logs, supporting affidavits, evidence, and the disputed documents, *in camera*. The Court finds that JCAAI and AAAAI have only partially established their claimed privileges.

### A. Documents Withheld or Redacted by JCAAI

JCAAI has withheld or redacted approximately six hundred pages of email conversations either involving Rebecca Burke or mentioning Ms. Burke in conversation. Ms. Burke is outside counsel for JCAAI. *See* Docket No. 91, Burke Decl. (averring that Ms. Burke represents JCAAI). JCAAI justifies all of its withholdings and redactions under the attorney-client privilege, extended in some instances by the common legal interest exemption. Select emails have also been withheld under the attorney work product protection.

For the attorney-client privilege to apply, the communications must be made for the purpose of facilitating the rendition of legal services to the client, and the communications must be kept confidential. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721; *Navigant Consulting*, 220 F.R.D. at 474. After reviewing the disputed emails, the Court finds that only certain email chains qualify for attorney-client protection.

*1. Emails Discussing a Response to Aetna's Inquiry*

All of the emails relate in some way to an inquiry Aetna made to AAAAI regarding an appropriate cap to the allergen immunotherapy doses that Aetna should reimburse. Via email and referenced conference calls, JCAAI personnel, AAAAI personnel, and Ms. Burke discussed a response. Ultimately, after a technical debate, JCAAI personnel agreed to a response, which they delivered to Aetna by letter. This section considers only those email chains directly discussing a response to Aetna's inquiry.[1]

---

[1] These email chains are: "Aetna and 95165;" "MUE for vial doses;" "AAAI's [*sic*] REQUEST for Subspecialty Medical Information;" "Dear Dr Aetna;" "68 doses;" "68 doses – Another question;" "Ltr to Jagmin-Aetna re 95165 Version 3 (D0430816);" "aetna letter;" "Aetna letter – FINAL;" "Ltr to Jagmin-Aetna re 95165 Version 3gng (D0430816-2);" "JCAAI to Aetna 7-10-12;" "JCAAI ltr to Aetna re 95165 (D0431700);" "Jagmin ltr 7.10 (D0431601-2);" "Jagmin Ltr 7 10 (D0431601)."

First, the Court notes these email discussions do not obviously address legal concerns. Instead, they reflect a medical and business debate within JCAAI and AAAAI over an appropriate response to Aetna's inquiry. Since the attorney-client privilege only protects legal communications, *see Harrelson*, 754 F.2d at 1167, and since JCAAI has not shown by affidavit or evidence that the emails address legal concerns, the Court finds that JCAAI has not established the attorney-client privilege for these emails. *See Navigant Consulting*, 220 F.R.D. at 474 (refusing to apply the attorney-client privilege where the court could only speculate as to whether the disputed documents contain legal advice).

Nevertheless, Ms. Burke is a trained lawyer and counsel for JCAAI. Her presence in the conversations suggests that JCAAI solicited legal counsel and that Ms. Burke helped tailor a response to Aetna focused on limiting JCAAI's legal liability. If this was indeed Ms. Burke's role, she provided legal services, such that her communications with JCAAI personnel could be protected by the attorney-client privilege. *See Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014) (finding that a draft response prepared by in-house counsel to a question raised by a counter-party in contract negotiations was protected by the attorney-client privilege since the "manifest purpose" of the lawyer's draft was to "deal with any legal liability" that could potentially arise).

However, even if this were the role of Ms. Burke, and even if JCAAI sufficiently established this role, the email discussions could not qualify for attorney-client protection because the discussions were not kept confidential. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721. Aetna's inquiry about dosage reimbursement was addressed to AAAAI—not JCAAI. The disputed emails show that AAAAI personnel participated in conversations regarding an appropriate response. Ms. Burke's comments, via email and referenced conference calls, were

made to both AAAAI and JCAAI personnel. Ms. Burke does not represent AAAAI. *See* Docket No. 91, Burke Decl. Therefore, absent a common legal interest, JCAAI waived whatever attorney-client privilege it may have had in the communications by disclosing these communications to a third-party. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721; *see also Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, A-03-CA-754-SS, 2006 WL 1544621, at *3 (W.D. Tex. May 31, 2006) ("Once a party waives the attorney-client privilege with respect to one communication, the privilege is waived with respect to all communications relating to the subject matter of the disclosed communication.").

In the Fifth Circuit, the common legal interest extension of the attorney-client privilege protects communications between potential co-defendants and their counsel. *In re Santa Fe*, 272 F.3d at 710. At the time of the email communications, JCAAI and AAAAI were not co-defendants; they are now. For the common legal interest exemption to apply, there must have been "a palpable threat of litigation" at the time of the communications, rather than "a mere awareness that [JCAAI's and AAAAI's] questionable conduct might some day result in litigation." *See id.* at 711. Here, the disputed emails show that JCAAI and AAAAI personnel coordinated a response to Aetna's inquiry regarding dosage reimbursement. While litigation may have been a thought in the minds of JCAAI and AAAAI personnel, as suggested by the inclusion of Ms. Burke in the discussions, JCAAI and AAAAI have not shown that the threat of litigation was a palpable reality. *See id.* at 714. Instead, the emails suggest—and JCAAI and AAAAI have not shown otherwise—that the discussions concerned a common business undertaking, which is

unprivileged. *Id.* Accordingly, the Court finds the emails are not protected, regardless of whether they concern legal matters.[2]

### 2. Emails Discussing a Response to JCAAI Members' Inquiries

Although JCAAI has not shown the emails relating to its response to Aetna are protected, it has shown that other emails relating to separate inquiries from JCAAI members about the Aetna response are protected. In these email chains,[3] JCAAI personnel seek, and Ms. Burke provides, legal advice on how to respond to JCAAI members' inquiries. Moreover, the discussions involve only JCAAI personnel and Ms. Burke. Therefore, the Court finds that JCAAI has established attorney-client protection for these documents. *See Harrelson*, 754 F.2d at 1167; *In re Grand Jury Proceedings*, 517 F.2d at 670.[4]

### 3. Emails Discussing a JCAAI Conference Call with Aetna

Similarly, JCAAI has shown that conversations[5] wholly contained to JCAAI personnel and Ms. Burke regarding a conference call with Aetna are protected by the attorney-client privilege. *See Harrelson*, 754 F.2d at 1167; *In re Grand Jury Proceedings*, 517 F.2d at 670.

---

[2] Similarly, Ms. Burke's claims to work product protection are denied. The work product doctrine may apply where litigation is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem.*, 214 F.3d at 593. The disputed work product aided JCAAI's response to Aetna's inquiry. No other primary motivating purpose has been shown.

[3] The email chains are: "Question from Marc F Goldstein, MD;" "RE: PLEASE REPLY – Conference Call RE: Question from Marc F Goldstein, MD."

[4] However, the attorney-client privilege only protects the communications between JCAAI personnel and Ms. Burke. The JCAAI members' inquiries are not shielded by the attorney-client privilege simply because they have been forwarded to Ms. Burke. *See Falsone v. United States*, 205 F.2d 734, 739 (5th Cir. 1953) ("If documents are not privileged while in the hands of a party, he does not make them privileged by merely handing them to his counsel.") (internal quotation marks omitted); 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2017 (3d ed. 2014); *see also* Docket No. 91, Ex. A, Aaronson Dep. 12:10–16 (stating that JCAAI does not work with its members in an attorney-client relationship).

[5] These conversations are email chains: "Aetna Call Wednesday AM – Issues as I see them;" "Ltr to Aetna (D0432957);" "Aetna Meeting;" "TONIGHT JCAAI Preparation Call;" "Aetna – 30 Dose Limit;" "Aetna scan;" "Aetna;" "Number of units of allergen extract covered by Aetna;" "Aetna 120 doses for New IT;" "Aetna/JCAAI Conference Call;" "Number of doses of Allergy Vaccine will Aetna cover in a year."

## B. Documents Withheld or Redacted by AAAAI

### 1. Emails Discussing a Response to Aetna's Inquiry

Many of the documents withheld and redacted by AAAAI are the same emails discussed above. Those emails involve JCAAI personnel, AAAAI personnel, and Ms. Burke. For the reasons discussed above, the Court orders the emails[6] be fully disclosed.

Additionally, the Court rejects AAAAI's argument for redacting those portions of the emails forwarding older messages. The Court finds those portions relevant and within the limited scope of the Court-ordered discovery. *See U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013) (quoting *Evon v. Law Offices of Sidney Mickell*, No. S–09–0760, 2010 WL 455476, at *2 n.1 (E.D. Cal. 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.").

### 2. Emails between AAAAI Personnel and Its Counsel

In contrast to the above emails, a small number of emails redacted by AAAAI show conversations between AAAAI personnel and its attorneys. The Court finds these emails[7] privileged. *See Harrelson*, 754 F.2d at 1167; *In re Grand Jury Proceedings*, 517 F.2d at 670.

### 3. Excel Spreadsheets

Finally, AAAAI has redacted Excel spreadsheets showing the personal information of attendees to a 2013 webinar, co-sponsored by JCAAI and AAAAI. AAAAI asserts this information is redacted for "HIPPA Compliance and Personal Privacy Issues." The Court orders

---

[6] AAAAI marks the disputed emails by bates numbers. The Court orders the following documents disclosed: Bates Nos. 31–42, 49–50, 64–65, 83–200, 203–237, 240–250.

[7] These emails are Bates Nos. 8, 51, 61, 66, 74, 76, 546, 630.

this information must be disclosed.[8]   AAAAI has not explained how "HIPPA Compliance" prevents disclosure.  Moreover, the parties have agreed to a protective order, which addresses AAAAI's privacy concerns. Docket No. 65

## IV. Conclusion

For these reasons, Plaintiffs' motion to compel Defendants' compliance with Court-ordered discovery (Docket No. 87) is GRANTED IN PART AND DENIED IN PART as follows:

- Defendant Joint Council of Allergy, Asthma & Immunology is ORDERED TO PRODUCE the following email chains to Plaintiffs in their entirety: "Aetna and 95165;" "MUE for vial doses;" "AAAI's REQUEST for Subspecialty Medical Information;" "Dear Dr Aetna;" "68 doses;" "68 doses – Another question;" "Ltr to Jagmin-Aetna re 95165 Version 3 (D0430816);" "aetna letter;" "Aetna letter – FINAL;" "Ltr to Jagmin-Aetna re 95165 Version 3gng (D0430816-2);" "JCAAI to Aetna 7-10-12;" "JCAAI ltr to Aetna re 95165 (D0431700);" "Jagmin ltr 7.10 (D0431601-2);" "Jagmin Ltr 7 10 (D0431601)."

- Defendant American Academy of Allergy, Asthma & Immunology is ORDERED TO PRODUCE the following documents to Plaintiffs in their entirety: Bates No. 31–42, 49–50, 64–65, 83–200, 203–237, 240–250, 546–573, 574–781, 1512–1533.

All other relief requested is hereby DENIED.

It is so ORDERED.

SIGNED this ___8___ day of ____Sept._____, 2014

ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

---

[8] The spreadsheets are Bates Nos. 546–573, 574–781, 1512–1533.