IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ACADEMY OF ALLERGY & ASTHMA | § | |
| IN PRIMARY CARE and UNITED | § | |
| BIOLOGICS, LLC, d/b/a UNITED | § | |
| ALLERGY SERVICES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIV. NO. 5:14-CV-00035-OLG |
| | § | |
| AMERICAN ACADEMY OF ALLERGY | § | |
| ASTHMA & IMMUNOLOGY, ET AL., | § | |
| | § | |
| Defendants. | § | |

DEFENDANTS PHADIA US INC. AND THERMO FISHER SCIENTIFIC INC.'S
<u>MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PETER BOLAND</u>

## TABLE OF CONTENTS

I.     INTRODUCTION..............................................................................................1

II.    BOLAND'S EXPERT OPINION TESTIMONY ....................................................3

III.   ARGUMENT AND AUTHORITIES ...................................................................4

       A.    Expert Testimony Must Be Reliable and Aid the Jury in Its Determination ............4

       B.    Boland Is Unqualified to Give the Economic, Medical and Legal Opinions
             Contained in His Report ........................................................................7

             1.    Boland is not qualified to offer opinions regarding antitrust economics......7

             2.    Boland is not qualified to offer opinions on the safety and efficacy of
                   certain allergy treatment practices. ............................................11

             3.    Boland is not qualified to offer opinions on the legality of UAS's business
                   practices. ....................................................................13

       C.    Boland's Testimony Is Advocacy, Not Expert Analysis.............................13

       D.    It Is Improper for Boland to Provide Opinion Testimony on Persons' or
             Entities' Motives, Knowledge, and State of Mind......................................17

       E.    Boland's Opinions Are Inadmissible Because He Applies No Reliable
             Methods or Principles. .......................................................................21

             1.    Boland's Bare Reliance on Experience is Insufficient. ...............................21

             2.    Boland's Opinions Are Not Tied to the Facts of the Case. ........................24

       F.    Boland's Testimony Should Also Be Excluded under Federal Rule of
             Evidence 403 ..................................................................................26

IV.    CONCLUSION AND PRAYER ........................................................................27

<u>TABLE OF AUTHORITIES</u>

## Cases

*Accident Ins. Co. v. Classic Bldg. Design, LLC,*
  No. 2:11CV33KS, 2012 WL 3913090 (S.D.Miss. Sept. 7, 2012)................................24

*Algarin v. New York City Dept. of Correction,*
  460 F. Supp. 2d 469 (S.D.N.Y. Oct. 30, 2006), *aff'd,* 267 F. App'x. 24 (2nd Cir. 2008) ...........22

*American Tourmaline Fields v. International Paper Co.,*
  No. 3:96CV3363D, 1999 WL 242690 (N.D. Tex. Apr. 19, 1999)................................25

*AstraZeneca LP v. Tap Pharm. Prod., Inc.,*
  444 F. Supp. 2d 278 (D. Del. 2006)................................18

*Berk v. St. Vincent's Hospital and Medical Center,*
  380 F. Supp. 2d 334 (S.D.N.Y. 2005) ................................22

*Berlyn, Inc. v. Gazette Newspapers, Inc.,*
  214 F. Supp. 2d 530 (D. Md. 2002)................................9

*Cooper v. Smith & Nephew, Inc.,*
  259 F.3d 194 (4th Cir. 2001) ................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993)................................passim

*Edmonds v. Ill. Cent. Gulf R. Co.,*
  910 F.2d 1284 (5th Cir. 1990) ................................11

*First United Fin. Corp. v. United States Fid. & Guar. Co.,*
  96 F.3d 135 (5th Cir. 1996) ................................19

*Fisher v. Halliburton,*
  Civ. Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ....19

*Gen. Elec. v. Joiner,*
  522 U.S. 136 (1997)................................6

*Guillory v. Domtar Indus.,*
  95 F.3d 1320 (5th Cir.1996) ................................5, 24

*Hathaway v. Bazany,*
  507 F.3d 312 (5th Cir. 2007) ................................24

*Heary Bros. Lightning Protection Co., Inc. v. Lightning Protection Inst.,*
  287 F. Supp. 2d 1038 (D. Ariz. 2003), *rev'd on other grounds,* 262 F. App'x. 815 (9th Cir. 2008)................................24

*Hershey v. Pac. Inv. Mgmt. Co. LLC,*
  697 F. Supp. 2d 945 (N.D. Ill. 2010) ................................20

*Highland Capital Mgmt., L.P. v. Schneider,*
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................15, 20

*In re Air Crash Disaster at New Orleans, La.,*
   795 F.2d 1230 (5th Cir.1986) ............................................................... 16, 17

*In re Fosamax Products Liab. Litig.,*
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ................................................... 13, 19

*In re Jackson Nat. Life Ins. Co. Premium Litig.,*
   No. 96-MD-1122, 2000 WL 33654070 (W.D. Mich. Feb. 8, 2000) ..........................17

*In re Prempro Prods. Liab. Litig.,*
   554 F. Supp. 2d 871 (E.D. Ark. 2008), *aff'd in rel. part,* 586 F.3d 547 (8th Cir. 2009)...............16

*In re Rezulin Prods. Liab. Litig.,*
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................ 5, 15, 19

*In re Trasylol Products Liab. Litig.,*
   08-MD-01928, 2010 WL 4052141 (S.D. Fla. May 12, 2010).........................................20

*In re Viagra Products Liab. Litig.,*
   658 F. Supp. 2d 950 (D. Minn. 2009) ...........................................................16

*In re Vioxx Prods. Liab. Litig.,*
   401 F. Supp. 2d 565 (E.D. La. 2005) ...........................................................11

*Kalamazoo River Study Grp. v. Rockwell Int'l Corp.,*
   171 F.3d 1065 (6th Cir. 1999) .....................................................................5

*Knight v. Kirby Inland Marine, Inc.,*
   482 F.3d 347 (5th Cir. 2007) .......................................................................7

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999).................................................................... 4, 6, 25, 26

*Marlin v. Moody Nat. Bank, N.A.,*
   248 F. App'x 534 (5th Cir. 2007)................................................................19

*Marx & Co. v. Diners' Club, Inc.,*
   550 F.2d 505 (2d Cir. 1977) .....................................................................15

*Moore v. Ashland Chemical Inc.,*
   151 F.3d 269 (5th Cir. 1998) ...................................................................5, 6

*Newton v. Roche Laboratories, Inc.,*
   243 F. Supp. 2d 672 (W.D. Tex. 2002) ..........................................................12

*Numatics, Inc. v. Balluff, Inc.,*
   66 F. Supp. 3d 934 (E.D. Mich. 2014)............................................................25

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,*
   691 F. Supp. 2d 448 (S.D.N.Y.2010) ...........................................................22

*Self v. Equilon Enterprises, LLC,*
   No. 400CV1903 TIA, 2007 WL 1880739 (E.D. Mo. June 29, 2007).........................................10

*Smith v. Rasmussen,*
   57 F. Supp. 2d 736 (N.D. Iowa 1999), *aff'd in rel. part,* 249 F.3d 755 (8th Cir. 2001) ...............12

*Taylor v. Evans,*
   1997 WL 154010 (S.D.N.Y. Apr.1, 1997) ...................................................................16

*Thomas J. Kline, Inc.,* v. *Lorillard, Inc.,*
   878 F.2d 791 (4th Cir. 1989) ........................................................................9, 10

*United States v. Hicks,*
   389 F.3d 514 (5th Cir. 2004) ...........................................................................7

*United States v. Vance,*
   No. 07–CR–351, 2011 WL 2633842 (N.D.Ill. July 5, 2011)......................................16

*Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.,*
   98 F. Supp. 2d 729 (W.D. Va. 2000) ....................................................................9

*Wilson v. Woods,*
   163 F.3d 935 (5th Cir. 1999) ...........................................................................7

**Rules**

Fed. R. Evid. 403 .................................................................................... 2, 5, 26
Fed. R. Evid. 702 ....................................................................................passim
Fed. R. Evid. 702(b) ...................................................................................5
Fed. R. Evid. 702(b)-(d) ...............................................................................5
Fed. R. Evid. 702(c) ...................................................................................5
Fed. R. Evid. 702(d) ...................................................................................6

**Other Authorities**

Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended,*
   138 F.R.D. 631, 632 (1991)............................................................................27

Defendants Phadia US Inc. ("Phadia") and Thermo Fisher Scientific Inc. ("Thermo Fisher") file this Motion to Exclude the Expert Testimony of Peter Boland.

## I.      INTRODUCTION

Peter Boland, Ph.D. ("Boland"), a health care consultant with Boland Healthcare, is designated by Plaintiffs as an expert witness in this matter. Boland was asked by Plaintiffs' counsel to "examine the allegations contained in the complaint, review the available evidence, and provide [his] opinions about UAS's business model, the impact of the defendants' conduct on plaintiffs, and the market for allergy testing and allergy immunotherapy, and related issues such as third-party payor practices and the modern payor and healthcare environment."[1]

Boland's "expert" conclusions after this review were that he believed that the evidence supplied to him, interpreted in light of his general healthcare industry experience, showed that (i) Defendants had strong motives to eliminate UAS to advance their own economic interests; (ii) that Defendants had the market power to influence third party payors and physicians and wielded that power to the detriment of UAS; and (iii) that UAS's model for testing and treating allergies is safe and cost effective and is not fraudulent.[2]

These opinions are inadmissible under Federal Rule of Evidence 702 and fall far short of the reliability standards for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Exclusion of this opinion testimony is required for multiple reasons:

---

[1] *See* Report of Peter Boland, Ph.D., May 2, 2016 ("Boland Report") at 3 (**Sealed Exhibit 1**). Boland also submitted a Rebuttal Report, dated July 1, 2016 (**Sealed Exhibit 2**).
[2] *Id.* at 3-4.

- Boland's opinions far outpace his expertise. His general experience as a consultant in the healthcare industry does not qualify him to give the economic, medical and legal opinions contained in his report.

- Boland seeks to summarize, in a slanted fashion, Plaintiffs' factual story by interpreting and drawing inferences from selected evidence. This narration is advocacy, not expert analysis, as is highlighted by the fact that Plaintiffs' counsel wrote sections of the report that also appear verbatim in the report of Plaintiffs' other expert, Dr. Donald House. In any event, the jury is not assisted by Boland's interpretation of evidence that they can interpret for themselves.

- It is improper for an expert witness to opine, as Boland attempts to do throughout his expert report, about the knowledge, intent or motivation of Defendants. It is well-settled that such state of mind testimony invades the province of the jury. In any event, Boland has no specialized expertise in determining what others may think, intend or know.

- Boland does not apply any reliable expert methodology or principles to formulate his opinions. He has done no studies, independent evaluation, or analysis of the facts of this case. Instead, Boland's opinions are based on unsupported personal impressions and speculation based on general healthcare industry experience. As a result, his testimony is highly unreliable.

- Boland's opinions should be excluded under Rule 403 of the Federal Rules of Evidence. To the extent his opinions are the proper subject of expert testimony, and are relevant and reliable at all, any probative value is substantially outweighed by the dangers of confusing the issues, misleading the jury, and unfair prejudice to Defendants.

Boland's "expert" testimony—which is nothing more than speculation and "interpretation" of cursorily reviewed documents by someone with only very generalized healthcare industry experience—does not even come close to meeting the requirements of admissibility. Instead, the Boland Report lays bare the Plaintiffs' apparent intention to tell their version of the story and convey their themes from the witness stand under the guise of assisting the jury through "expert" analysis, rather than from counsel's podium where the jury understands it is advocacy. This is precisely what *Daubert* and Rule 702 prohibit.

## II.     BOLAND'S EXPERT OPINION TESTIMONY

Boland's principal education, including his masters and Ph.D. were obtained in the fields of urban planning. His education in the healthcare field is limited to a "certificate of completion" for a healthcare course given over "a number of weeks" at Harvard during sometime in the 1980's. His work experience has been in the "managed healthcare" industry.[3] He has never previously provided any testimony or expert report having to do with the allergy testing field.[4] He cannot recall ever having written any articles or other materials that have to do with the allergy and immunotherapy field.[5]

Boland has formulated the following opinions in this case, which are set forth in his expert report:



---

[3] Deposition of Peter Boland, May 26, 2016 ("Boland Dep.") at 19:5-19:10 (testifying that he works in the "███████████████████████████████████████████████████████████████████████ ████████") (cited excerpts of the Boland Dep. are attached as ***Sealed Exhibit 3***).

[4] *Id.* at 21:16-19 ("███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████").

[5] *Id.* at 22:10-21 ("█████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████").

- 

- 

- "[6]

For the reasons discussed below, these opinions are unreliable and inadmissible and must be excluded from the evidence of this case.

## III.   ARGUMENT AND AUTHORITIES

### A.   Expert Testimony Must Be Reliable and Aid the Jury in Its Determination

The Court must act as gatekeeper to ensure that unreliable expert opinions are not presented to the jury. *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("Daubert's general holding . . . applies . . . to testimony based on 'technical' and 'other specialized' knowledge."). Federal Rule of Evidence 702 requires that a testifying expert be qualified and that his or her testimony be reliable and relevant:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[6] Boland Report at 3-4.

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In addition to establishing the expert's qualifications and the reliability and relevance of the testimony, the trial judge must ensure that the probative value of proposed expert evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." *Daubert*, 509 U.S. at 595 (citing Fed. R. Evid. 403). The party offering the expert has the burden of proving that the expert's testimony is admissible. *Daubert*, 509 U.S. at 592 n.10; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Courts have held that even qualified experts may not testify about "lay matters which a jury is capable of understanding and deciding without the expert's help." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (citation omitted) (examples of "expert" testimony on lay issues that courts have excluded include "factual narratives and interpretations of conduct or views as to the motivation of parties" (citations omitted)). Thus, experts cannot "supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *Id.*

Rule 702(b)-(d) address the reliability of an expert's opinion. Rule 702(b) requires that the expert's opinion be based on "a reliable foundation" of facts and data – and cannot be based upon "speculation, conjecture, and possibility." *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1072-73 (6th Cir. 1999); *see also Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (court property excluded expert's opinion because it was based upon incorrect, altered facts and speculation designed to bolster the defendant's position).

Rule 702(c) requires the district court to examine the general principles and methodology used by the expert "to make certain that an expert, whether basing testimony upon professional

5

studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152; *see also Moore v. Ashland Chemical, Inc.*, 151 F.3d at 276 (holding that the proponent of the testimony must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable."). *Daubert* and its progeny instruct the district courts to evaluate the relevance and reliability of the methodology of proffered expert testimony based on a nonexclusive list of factors: (1) whether the expert's theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) "the known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) the "general acceptance" of the methodology in the scientific community. *Daubert*, 509 U.S. at 593-94.

Subpart (d) of Rule 702 requires district courts to determine whether the expert "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Thus, even if a particular method is generally viewed as reliable by both the relevant scientific community and the courts, it does not follow that every application of that methodology is reliable. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001)(noting that a "reliable differential diagnosis provides a valid foundation for an expert opinion," but that the differential diagnosis conducted by the expert at issue was not reliable). A district court is not required to admit expert testimony "that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Thus, "the reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal citation omitted).

**B.      Boland Is Unqualified to Give the Economic, Medical and Legal Opinions Contained in His Report**

The threshold requirement for the admission of expert testimony is that the witness be qualified to give the proffered opinions. Federal Rule of Evidence 702 requires that the expert must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Fifth Circuit has interpreted this requirement to mean that "to qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States. v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (citation omitted). A district court should exclude purported expert testimony if the witness is not qualified to testify in a particular field or on a given subject. *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

Boland is not an economist, doctor, scientist, or attorney. He does not claim to have educational degrees in any of these fields. He does not claim to have working experience in any of these fields. He cannot point to relevant testimony or writings in these fields. However, as detailed below, he does assert opinions in these fields.

**1.      Boland is not qualified to offer opinions regarding antitrust economics.**

At most, Boland's work experience might qualify him to provide general testimony about the structure, terminology, and practices of the managed care industry. However, Boland goes far beyond testifying about general healthcare industry custom and practice and attempts to give

7

antitrust economic testimony about relevant markets, market power and alleged anticompetitive conduct. Indeed, four of the six bullet points contained in the Boland report's summary of opinions directly opine on the Defendants' alleged market power and influence and/or motive to eliminate competition.[7] Further attempts to discuss the alleged relevant markets, market share and other economic issues appear throughout Boland's report.[8]

Boland lacks the knowledge, skill, experience, training or education to testify on these economic issues. Boland does not consider himself to be an economist, has not performed economic modeling, and admits that he is not qualified to do the econometric analyses economists typically use to define relevant markets.[9] He has never testified regarding anticompetitive behavior in the antitrust context.[10] He holds no degrees in economics and has never worked as an economist.

Antitrust economics is a specialized field requiring specific education and experience that is distinct from general business experience in any particular industry. As a consequence, numerous courts have disqualified proposed expert witnesses on the ground that general business experience was insufficient to enable a non-economist witness to testify as to economics issues within that

---

[7] *See* Boland Report at 3-4.

[8] *See, e.g.,* Boland Report at 5 ("⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛"); *id.* at 8 ("⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛"); *id.* at 12 ("⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛").

[9] Boland Dep. at 243:17-20, 243:25-244:9, 246:14-247:7 (discussing economic modeling and testifying that he has never done economic modeling himself and would not be qualified to do the economic modeling related to defining markets).

[10] *Id.* at 247:8-247:15 ("⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛").

industry. *See Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 536 (D. Md. 2002) (holding that "general business experience unrelated to antitrust economics does not render a witness qualified to offer an opinion on complicated antitrust issues.").

For example, in *Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729 (W.D. Va. 2000), the court examined whether an "independent economic consultant" who had advised energy companies on market research issues, was qualified to testify as to the relevant market in this antitrust case. *Id.* at 730-34. Although the purported expert had testified in numerous antitrust cases relating to the coal industry, none of his prior testimony concerned defining a relevant market and he had never authored a book or article dealing with antitrust issues. *Id.* at 730-31. Furthermore, he held only an engineering degree and had taken a single economics course decades earlier. *Id.* at 732. The court reasoned that his geological engineering curriculum, though it may provide insight into the mining industry, "cannot be assumed to provide its graduates with an economics background appropriately necessary to define a relevant market in an antitrust case." *Id.* The court discounted the witness' consulting experience because, although he did prepare market analyses for his clients, "there are differences between an analysis for business investment and an analysis for antitrust purposes." *Id.* The court concluded that the witness was not qualified to give antitrust testimony because his expertise was in business analyses rather than antitrust economics. *Id.* at 733.

Similarly, in *Thomas J. Kline, Inc., v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989), the purported expert's testimony addressed whether the defendant's shift in credit practices was unjustified credit and price discrimination under the Robinson-Patman Act. *Id.* at 799. The Fourth Circuit determined that the court abused its discretion by permitting the witness to testify

in light of the facts that: (a) she admitted that she was not an economist; (b) her general business education failed to indicate whether she possessed any training in antitrust or credit; (c) "[d]uring her entire career [she] had published only one article, a piece which had nothing to do with price discrimination, credit or antitrust generally;" and (d) "[h]er work experience was limited largely to analyses of companies' financial health." *Id.* at 799-800.

The reasoning of these cases compels the exclusion of Boland's opinions regarding the definition of the relevant markets and Phadia's alleged power and influence within those markets. Like the industry consultants in those cases, Boland's work history has been limited to providing business and strategy advice, and he lacks the relevant economic training and experience necessary to render opinions about antitrust markets and market power. *See Self v. Equilon Enters, LLC*, No. 400CV1903 TIA, 2007 WL 1880739, at *1-2 (E.D. Mo. June 29, 2007) (holding that a former retail fuel executive with experience in developing retail fuel pricing strategies based on market conditions does not render him qualified to offer opinions as to antitrust economics and relevant market analysis in the motor fuel market).

**2.   Boland is not qualified to offer opinions on the safety and efficacy of certain allergy treatment practices.**

Boland also offers opinions regarding the "Safety and Appropriate Standard of Care" for allergy testing and immunology in Section VII.D of his Report.[11] In that Section, Boland concludes, among other things, that "█████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[11] *See* Boland Report at 19-23.

█████████████████████████████████████████████████████████████

████████████████████████████████████████"[12]

To provide expertise on the safety of medical procedures and the standard of care applicable to physicians, one must, at the very least, be a physician or otherwise have education, training or experience in the relevant clinical practice, and Boland fails this test. *See Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284, 1287 (5th Cir. 1990) (holding that a clinical psychologist was unqualified to opine as to the effect of stress on coronary artery disease because he was not a medical doctor and was not involved in medical diagnoses or testing); *In re Vioxx Products Liab. Litig.*, 401 F. Supp. 2d 565, 587 (E.D. La. 2005) (holding that a person who was not a medical doctor was unqualified to testify as to the practices of physicians).

Boland admits he has no professional experience regarding the "████████████████ ███████████████████"[13] Incredibly, he claims some expertise in this area on the fact that he himself has allergies and his resulting personal interest in the subject has led him to "█████████ ██████████████████████████████"[14] He claims that this patient experience and reading makes him an "██████████████████████████████"[15]

---

[12] *Id.* at 22. Boland also asserts that "████████████████████████████████████ ████████████████████████████████████████ ████████" *Id.* at 23.

[13] Boland Dep. at 73:13-73:18 ("███████████████ ████████████████████████████████████████ ███████████████████████████").

[14] *Id.* at 69:20-70:7 ("███████████████████████████████ ████████████████████████").

[15] *Id.* at 70:8-70:13 ("████████████████████████ ████████████████████████████████████████").

The notion that having allergies renders him an expert who can opine on the safety of medical procedures and the standards of care applicable to physicians is absurd. Boland admits he would not be qualified to publish an article on the efficacy of allergy treatment in any peer-review journal.[16] Nevertheless, he claims that he can "███████████████████████████████ ███████████████████████████████████████████████████████"[17] However, simply reading medical studies in the allergy treatment field does not render him an expert. As many courts have noted, a witnesses' "review of literature in an area outside his field as a layman does not make him any more qualified to testify as an expert … than a lay person who read the same articles." *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 n.6 (W.D. Tex. 2002) (citation omitted); *see also Smith v. Rasmussen*, 57 F. Supp. 2d 736, 766 (N.D. Iowa 1999) ("Courts are suspicious of purported expertise premised solely or primarily on a literature review."), *aff'd in rel. part*, 249 F.3d 755, (8th Cir. 2001). Because he lacks any medical or clinical expertise, whether in allergy testing and immunotherapy or otherwise, Boland must be precluded from testifying as to the safety and efficacy of such testing and treatments.

---

[16] *Id.* at 217:22-218:1 ("███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████").

[17] *Id.* at 218:12-219:6 ("████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████").

3.   **Boland is not qualified to offer opinions on the legality of UAS's business practices.**

Boland is not an attorney, has never worked for the office of the inspector general, and has no experience in prosecuting or defending claims of fraud.[18] Despite this lack of expertise, Boland concludes that he has "███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████"[19] Boland has no legal expertise or experience on which to base this opinion. Instead, he simply reviewed the information concerning fraud supplied to the public on the websites of certain third party payors to conclude that UAS's practices would not fit the websites' descriptions of fraud. This cursory review, done by a non-attorney with no specialized expertise on the subject, is inadmissible and should be precluded in this case.

**C.   Boland's Testimony Is Advocacy, Not Expert Analysis**

Rule of Evidence 702 does not permit the expert to simply tell the jury what the facts are, or what conclusions to reach based on the factual evidence that the jury can interpret for itself. *In re Fosamax Products Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Instead of applying a proven methodology of any type to analyze the facts of the case themselves, Boland simply claims to be an expert on the facts—*i.e.* he reviews documents, makes his own inferences from those documents, in order to tell the jury what the facts are and what conclusions to reach from those facts. In fact, he admits that his approach was to "█████████████████████████████████ ███████████████████"[20]

---

[18] *Id.* at 245:1-10.
[19] Boland Report at 27.
[20] Boland Dep. at 37:3-8.

Boland testified that he reviewed the documents selected for him by Plaintiffs' counsel and does not recall asking for much, if anything, beyond that.[21] His only "method" was to read the materials supplied by counsel to determine whether he believed the evidence supported Plaintiff's case.[22]

When confronted at his deposition with sections of his report that were repeated verbatim in the report of Plaintiffs' other expert witness Dr. House, he admitted that the likely cause of the identical passages was the fact that Plaintiffs' counsel drafted excerpts of his report.[23] For example, Boland's report included some assertions about allergy treatment and immunotherapy for which he cited Plaintiffs' representative Dr. Schaffer.[24] Upon questioning in his deposition, he admitted that counsel drafted the language.[25] Boland could not identify with certainty which parts of his

---

[21] *Id.* at 115:6-22 ("                                            ").

[22] *Id.* at 36:13-23, 54:20-55:24 ("                                                        ").

[23] *Id.* at 202:22-204:17 ("                                            ").

[24] Boland Report at 11.

[25] Boland Dep. at 203:9-205:22 ("                                                        ").

report were drafted by counsel, though he agreed with the conclusions expressed by counsel in those sections.[26]

This is not expert analysis; it is narrative advocacy and is improper because it usurps the role of the jury. Courts have rejected this advocacy-disguised-as-expert-analysis approach. In *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977), the proposed expert testimony concerned, *inter alia*, whether a defendants' contractual performance was excused. *Id.* at 509-510. The court found that this testimony invaded the exclusive province of the jury by applying the law to the facts "based merely on his examination of documents and correspondence, which were equally before the judge and jury." *Id.* at 510-11.

Boland's discussion of evidence that the jury can interpret for themselves is clearly the type of argumentative summary of evidence that courts exclude. First, courts reject the use of experts as shortcuts to simply marshal and present the party's evidence in narrative form. In *Highland Capital Management., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005), the court noted that "[w]hile an expert must of course rely on facts or data in formulating an expert opinion . . . an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Id.* at 469; *see also Rezulin*, 309 F. Supp. 2d at 551 (rejecting portions of plaintiffs' expert's testimony that was "a narrative reciting selected regulatory events" because

---

[26] *Id.* at 214:11-25 ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

"[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence").

Second, courts reject the use of experts to set forth an advocacy-based narrative based on this marshaling and interpretation of evidence. In *In re Viagra Products Liability Litigation*, 658 F. Supp. 2d 950 (D. Minn. 2009), the expert devoted a significant portion of her opinion to summarizing the regulatory history of Viagra and "stat[ing] her advocacy-based interpretation of documents in the record concerning regulatory activity related to Viagra." *Id.* at 967. Because "there is no evidence that the jury could not be presented with these same documents and draw from them the relevant regulatory history of Viagra" the testimony was not helpful to the jury and was not admissible. *Id*; *see also United States v. Vance*, No. 07–CR–351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011)(permitting an expert to provide summary testimony "based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself"); *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"), *aff'd in rel. part*, 586 F.3d 547 (8th Cir. 2009); *Taylor v. Evans*, No. 94CV8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting portions of expert report on the ground that the testimony consisted of "a narrative of the case which a lay juror is equally capable of constructing").

The Fifth Circuit has held that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster*, 795 F.2d 1230, 1233 (5th Cir. 1986). Here, it is not just that Boland's Report is <u>like</u> advocacy, but instead, it <u>is</u> the actual advocacy of Plaintiffs' counsel because Plaintiffs' counsel drafted parts of his and Dr.

House's reports. *See In re Jackson Nat'l. Life Ins. Co. Premium Litig.,* No. 96-MD-1122, 2000 WL 33654070, at *1 (W.D. Mich. Feb. 8, 2000) (noting that "undeniable substantial similarities between [the expert]'s report and the report of another expert prepared with assistance from the same counsel in an unrelated case, demonstrate that counsel's participation so exceeded the bounds of legitimate 'assistance'"). As such, Boland's report fails the test the Fifth Circuit states in *Air Crash Disaster* as it provides nothing to the jury beyond what the Plaintiffs' counsel can argue at trial.

Thus, to the extent that Boland's report simply tells the jury what he believed happened, based on his own interpretation and evaluation of documents and deposition testimony (or worse yet, his verbatim adoption of Plaintiff's counsel's views on the same), it is inadmissible. The Court should exclude Boland's slanted discussion of the evidence and leave that interpretation to the jury.

**D.     It Is Improper for Boland to Provide Opinion Testimony on Persons' or Entities' Motives, Knowledge, and State of Mind.**

Throughout his report, Boland states that Defendants held specific states of mind, drawing conclusions that should be determined by the jury. For example, Boland comments that "███████ ███████████████████████████████████████████████████████████" of certain alleged facts.[27] Boland also opines that Defendants sought to achieve certain objectives and their actions were driven by the purpose to protect their own profits.[28] Continuing his comments on the Defendants' states of mind, Boland also asserts that there is evidence "██████████████████████████████████████ ████████████████████████████████████████████████████████████"[29] He goes on

---

[27] Boland Report at 27.
[28] *Id.* at 28.
[29] *Id.* at 29.

to conclude that Phadia appears to have taken certain actions "███████████████████" competition and that, in Boland's opinion, "█████████████████████" the impact on the market that aspects of their strategy would have.[30]

Boland does not limit his opinions about states of mind to those of the Defendants; he also opines as to the motivations of third-party payors in deciding to change certain reimbursement policies. For example, he opines that ████████████████████████████████████████ ██████████████████████████████████"[31] He concludes that "███████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████"[32] He even seeks to testify on the underlying motivation for the third party payor's alleged susceptibility to Defendants' influence, contending that the insurance companies "█████████████████████████████████████████████"[33]

Thus, the main thrusts of Boland's report are that Defendants acted with a certain intention, *i.e.* to coordinate their efforts to harm UAS by influencing market participants, and that third party payors internalized Defendants' messages and acted upon them. It is well-established that experts are not permitted to opine about what individuals or entities knew, believed, or intended. *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) ("Expert witnesses are not permitted to testify . . . regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred.") (citation omitted).

---

[30] *Id.* at 30. Other examples appear throughout Boland's report. *See, e.g. id.* (stating that his "███ ████████████████████████████████████████ █████"); *id.* (opining that "███████████████████████████ ████████████████████████████"████").

[31] *Id.* at 37.

[32] *Id.*

[33] *Id.*

Applying this principle, a trial court may strike expert testimony that evaluates a party's state of mind. *Fisher v. Halliburton*, Civ. Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009) (striking an expert's opinion that "the evidence strongly suggests that KBR management wanted to maximize its performance under the contract in order to maximize its profits"). This standard has been applied by the Fifth Circuit to affirm the exclusion of an expert opinion of the opposing party's dishonesty. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996). The Court found such an opinion would go "beyond the scope of expertise" and such a conclusion "will not substitute for evidence of dishonesty." *Id.*

Courts reject such state of mind testimony for two reasons. First, no expert is truly qualified to render such opinions. *Rezulin*, 309 F. Supp. 2d at 546 ("the opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise."). For example, the court in *In re Fosamax* excluded a doctor's "conjecture" regarding "knowledge, motivations, intent, state of mind, or purposes" of the Defendant and its employees because the doctor's regulatory expertise "does not give her the ability to read minds." 645 F. Supp. 2d at 192. . There is nothing in Boland's background which would support the notion that he can "read minds" any better than the expert in *In re Fosamax*, and his testimony should be rejected.

Second, courts exclude expert testimony about a party's state of mind because that "evaluation is within the province of the jury." *Fisher*, 2009 WL 5216949 at *2. The Fifth Circuit has held that "an expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind." *Marlin v. Moody Nat'l. Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007). Thus, because that testimony is not helpful to the trier of fact, it is

inadmissible under Rule 702. *See In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4052141, at *8 (S.D. Fla. May 12, 2010) (issues of knowledge, motive and intent are "classic jury questions").

The analysis of the court in *Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945 (N.D. Ill. 2010), compels exclusion of Boland's testimony here. In that case, the expert's report stated his opinion that the Defendant PIMCO intended to manipulate prices and that the Chicago Board of Trade instituted position limits in response to its belief that PIMCO had engaged in improper trading practices. *Id.* at 949-50. The court reasoned:

> While Mr. Rickards is accomplished in his field. . . ,there is nothing currently before the Court that demonstrates that he is competent to opine on the mental states of others. In other words, the Court has no reason to believe that Mr. Rickards' expertise affords him the ability to read minds. His opinions on PIMCO's intent and the CBOT's beliefs, therefore, are based solely on his inferences drawn from evidence found in the record. . . . Permitting him to testify regarding the state of mind of either PIMCO or the CBOT would effectively allow him to substitute his inferences for those that the trier of fact can and should draw on its own. This is not permitted.

*Id.* at 949. Similarly, in *Highland Capital*, the court excluded expert testimony where the expert "commonly interjects his opinion as to the state of mind and knowledge possessed by defendants and non-parties to this action . . . and speculates as to how obtaining information . . . . affected the [parties'] actions." 379 F. Supp. 2d at 469.

Like the excluded testimony in *Hershey* and *Highland Capital*, Boland speculates on the intent of Defendants and the effect of their actions on the state of minds of others. His testimony should be excluded.

**E.      Boland's Opinions Are Inadmissible Because He Applies No Reliable Methods or Principles.**

Boland's opinion testimony should also be excluded because it lacks the most critical elements of proper expert testimony: the use of reliable methods and principles and the reliable application of those methods and principles to the facts of the case. Fed. R. Evid. 702.

**1.      Boland's Bare Reliance on Experience is Insufficient.**

One problem that pervades Boland's opinion testimony is his bare reliance on his subjective experience, rather than on any analytical method, survey, study, test or other independent analysis of the facts. For example, Boland states that Phadia has a substantial market share of the allergy blood testing market and concludes that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"[34]

Boland's anecdotal personal experience is not a reliable methodology under Rule 702. The law is clear that an expert witness who purports to rely on his own personal experience does not escape the rigors of *Daubert. Tanner v. Westbrook*, 174 F.3d 542, 546 (5th Cir. 1999). "An expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion" and instead "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

---

[34] Boland Report at 5. There are other examples of these "experience" based opinions. *See, e.g.,id.* at 26 ("██████████████████████████████████████████████████████████"); *id.* at 22 ("████████████████████████████████████████████████████████████████████████████████████████████████").

experience is reliably applied to the facts.'" *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 464 n.87, 473 n.148 (S.D.N.Y. 2010) (citations omitted).

Boland wholly fails to show that his personal experience in the industry could possibly lead to a reliable conclusion about, for example, the market power and influence of any particular firm and how that firm could influence an insurance company. Boland testified that he believes the insurance companies would be influenced by Phadia because Phadia is a "███████████" and that he has "██████████████████████████████████████" and he "██████████████████ ██████████████████████████████"[35] This conclusory opinion is wholly unreliable. First, even if experience could substitute for analysis[36] on this topic, Boland lacks the right experience. He admitted that he has never worked for a third party payor and has never been responsible for making decisions regarding benefits determinations.[37]

Second, courts flatly reject the idea that purely anecdotal evidence like Boland's is consistent with the reliable methodology required. In *Berk v. St. Vincent's Hospital & Medical Center*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005), the expert opined that, in his personal experience, the presence of fluid draining from a knee put the defendant physician on notice of an infection. The court excluded that testimony noting that "[a]n anecdotal account of one expert's experience, however extensive or impressive the numbers it encompasses, does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community." *Id.* at 354. *See also Algarin v. New York City Dep't. of Corr.*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. Oct. 30, 2006), *aff'd*, 267 F. App'x. 24 (2d Cir. 2008) (noting that when an expert relies solely on "subjective

---

[35] Boland Dep. at 259:9-13; 260:5-25.
[36] Boland admits he did no quantitative analysis, survey, nor did he talk to a single insurance company. Boland Dep. at 261:5-262:5.
[37] Boland Dep. at 64:18-23, 65:15-18.

inference he has drawn from his own personal experience" it is not reliable methodology, but instead is simply "personal disagreement" with the parties' conduct).

Third, there is simply too big an analytical gap between the facts of the case and Boland's conclusion that the insurance companies would certainly change their policies based on Phadia's influence. Indeed, in making that conclusion, Boland ignores aspects of his own experience and the actual testimony in this case. First, Boland admits that many factors influence third party payors, such as concerns about substandard care or billing fraud,[38] clinical factors, market feedback, and other strategies.[39] In fact, Boland testifies that "███████████████████████████ ███████████████████████████████████████████████████" and "████████ ██████████████████████████████████████████"[40] Given this wide range of possibilities, his conclusion that Phadia influenced the third party payor policy changes is wholly speculative and based on nothing more than the *ipse dixit* of a proffered expert witness.

More importantly, Boland's speculation that the third party payors made their reimbursement policy changes because of Defendants' conduct directly conflicts with the testimony of those third party payors themselves. Without exception, the third party payors—via the testimony provided by ten such entities—confirmed that Defendants had no influence over their decision making on any reimbursement policy changes.[41] Instead, the changes were based on

---

[38] Boland Dep. at 93:18-94:16.

[39] *Id.* at 122:6-124:18.

[40] *Id.*

[41] Barry Lachman (Parkland Community Health Plan) Dep. at 217:16-218:3; David Palafox (El Paso First Health Plan) Dep. at 172:22-176:4; Michael Martin (Blue Cross Blue Shield of Arkansas) Dep. at 68:5-12; Dwight Brower (Blue Cross Blue Shield of Louisiana) Dep. at 178:22-179:18; Robyne Goates (Blue Cross Blue Shield of Kansas) Dep. at 7:25-8:6; Molly O'Toole (Blue Cross Blue Shield of North Carolina) Dep. at 46:19-22, 47:18-23; Barbara Muller (Wellmark Blue Cross Blue Shield) Dep. at 5:2-7, 8:25-9:6; Allan Chernov (Blue Cross Blue Shield of Texas) Dep.

the third party payors' independent judgment based on clinical factors analyzed pursuant to its internal processes.[42] Boland's unsupported "experience" that Defendants would have influence simply cannot overcome these uncontradicted facts.

### 2.      Boland's Opinions Are Not Tied to the Facts of the Case.

Boland's opinions lack the requisite grounding in the sufficient factual data that is required to meet Rule 702's test for reliability. As the Fifth Circuit has held, the "existence of sufficient facts . . . is in all instances mandatory" because "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (citation omitted).

Expert opinions based on facts that are indisputably wrong can be excluded because the errors render the testimony irrelevant and unhelpful to the trier of fact. *Guillory*, 95 F.3d at 1331 ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation." *Id.*; *see also Accident Ins. Co. v. Classic Bldg. Design, LLC*, No. 2:11CV33KS, 2012 WL 3913090, at *13 (S.D. Miss. Sept. 7, 2012) (collecting cases and noting that "courts routinely reject expert opinions based on incorrect factual bases."); *see Heary Bros. Lightning Protection Co. v. Lightning Protection Inst.*, 287 F. Supp. 2d 1038, 1066 (D. Ariz. 2003), *rev'd on other grounds*, 262 F. App'x. 815 (9th Cir. 2008) (noting that because the evidence established a different number of market participants than that assumed by the expert, the expert's testimony was unreliable). Similarly, conjecture based on no facts is speculation and is not admissible. *Am. Tourmaline Fields v. Int'l Paper Co.*, No. 3:96CV3363D, 1999 WL 242690, at *2

---

at 127:14-25; Sonya Canady (Highmark Blue Cross Blue Shield) Dep. at 19:1-6, 26:18-24, 51:9-12; William Glomb (Superior HealthPlan and Texas Medicaid) Dep. at 127:20-128:1, 140:2-11. These deposition excerpts are compiled and attached as ***Sealed Exhibit 4***.

[42] *See* Sealed Exhibit 4.

(N.D. Tex. Apr. 19, 1999) ("Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and must be "more than belief or unsupported speculation.") (citations omitted).

Boland's opinions often lack the citation of any factual support. For example, for his opinion that the alleged conspiracy continues to this day, he did not cite any support and, when pressed in his deposition, he admitted that he was unaware of any supporting facts and that the statement may have come from Plaintiffs' counsel.[43] He further admits that there are other sections of his report that are a "collaboration" with Plaintiffs' counsel, even though he did not cite Plaintiff's counsel as a source.[44]

This alone mandates exclusion of Boland's report for two reasons. First, courts have rejected expert reports in which the attorney crossed the line between technical assistance geared toward ensuring that the report meets the requirements of the discovery rules and more substantive ghostwriting of the report. *See Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 943 (E.D. Mich. 2014). Second, the practice Boland admits to, which is using Plaintiffs' counsel as a source for information but not attributing the source, conflicts with professional practice which requires citation of sources. Boland himself affirms that publication in peer reviewed journals requires citation, but disclaims the need to uphold that professional standard here because it is "█
████████████"[45] However, in *Kumho Tire*, the Supreme Court stressed that the trial court is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

---

[43] Boland Dep. at 200:8-202:21.
[44] *Id.* at 211:7-214:18.
[45] *Id.* at 212:23-213:9.

practice of an expert in the relevant field." *Tire*, 526 U.S. at 152. Boland fails to meet this test here.

Moreover, Boland also makes significant errors with respect to his claimed factual support. For example, in his deposition he testified that he relied on the deposition testimony of third party payor Superior to conclude that "███████████████████████████ ████████"[46] However, at the time of Boland's deposition, no depositions of Superior had been taken.[47] Boland's reliance on this phantom evidence renders his opinions wholly unreliable and inadmissible.

In sum, Plaintiffs cannot establish, as they must, that Boland's opinions are grounded in relevant expertise, sufficient experience, reliable methodology, or an accurate foundation of sufficient facts. Without these indicia of reliability, Boland's opinions are a series of unsupported and speculative inferential leaps that would not assist the jury in this case. This Court should exclude Boland's testimony in its entirety.

**F.    Boland's Testimony Should Also Be Excluded under Federal Rule of Evidence 403**

To the extent that Boland's opinions are reliable (which they are not), their relevance is greatly outweighed by the risks of unfair prejudice and, therefore, should be excluded under Federal Rule of Evidence 403. *Daubert* makes clear that the trial court, in its role as gatekeeper with regard to expert testimony, must be mindful of other applicable rules, and particularly Rule 403: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." 509 U.S. at 595

---

[46] *Id.* at 262:15-263:25.
[47] *Id.* at 264:1-25.

(quoting Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)). The gatekeeping responsibility of courts with regard to "expert" testimony is so important because of the danger of a jury crediting unreliable or non-probative testimony because it supposedly comes from an expert. For that reason, Rule 403 is an important protection against the prejudice that results from the admission of unreliable advocacy like Boland's under the guise of "expert" testimony.

### IV.    CONCLUSION AND PRAYER

Boland's proffered "expert" testimony is inadmissible in its entirety. Boland lacks the expertise to opine on the economic, medical and legal issues address in his report. He purports to read the minds of Defendants and other market participants. He offers no reliable methodology or independent analysis of the facts, but offers speculation that ignores the facts. Defendants would be highly prejudiced by the admission of this testimony which does not apply any technical or scientific expertise to assist the jury, but merely accepts uncritically and then parrots the themes of Plaintiffs and their counsel in this case.

WHEREFORE, Defendants respectfully request that the Court exclude the testimony of Peter Boland from the trial of this matter and for such other and further relief to which they may be justly entitled.

Dated: August 1, 2016

Respectfully submitted,

**VINSON & ELKINS LLP**

/s/ James A. Reeder, Jr.
**James A. Reeder, Jr.**
Texas Bar No. 16695010
Federal Bar No. 12381
**Christopher V. Popov**
Texas Bar No. 24032960
Federal Bar No. 88136
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: 713-758-2202
Facsimile: 713-615-5033
E-mail: jreeder@velaw.com; cpopov@velaw.com

**Liane Noble**
Texas Bar No. 24079059
Federal Bar No. 2329197
**Michelle Arishita**
Texas Bar No. 24092048
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Telephone: 512-542-8505
Facsimile: 512-236-3234
E-mail: lnoble@velaw.com;
marishita@velaw.com

**ATTORNEYS FOR DEFENDANTS
PHADIA US, INC. AND THERMO
FISHER SCIENTIFIC INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion to Exclude the Expert Testimony of Peter Boland has been served on all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) on this 1st day of August, 2016.

*/s/ James A. Reeder, Jr.*
James A. Reeder, Jr.

**Ronald Casey Low**
**Elizabeth Kozlow Marcum**
**Ben Bernell**
Pillsbury Winthrop Shaw Pittman LLP
401 Congress Avenue, Suite 1700
Austin, Texas 78701-3443
512-375-4916
Fax: 512-375-4901
Email: casey.low@pillsburylaw.com
liz.marcum@pillsburylaw.com
ben.bernell@pillsburylaw.com

**ATTORNEYS FOR PLAINTIFFS**
**UNITED BIOLOGICS, LLC AND**
**ACADEMY OF ALLERGY & ASTHMA**
**IN PRIMARY CARE**

**E. Leon Carter**
**Courtney Barksdale Perez**
**Linda R. Stahl**
**Joshua J. Bennett**
**Stacey Cho**
Carter Scholer Arnett Hamada & Mockler, PLLC
8150 N. Central Expressway
Suite 500
Dallas, TX 75206
214-550-8160
Fax: 214-550-8185|
Email: lcarter@carterscholer.com
cperez@carterscholer.com
lstahl@carterscholer.com
jbennett@carterscholer.com
scho@carterscholer.com

**ATTORNEYS FOR ALLERGY**
**AND ASTHMA**
**NETWORK/MOTHERS OF**
**ASTHMATICS, INC. AND**
**TONYA WINDERS**

29