IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE and UNITED BIOLOGICS, LLC, d/b/a UNITED ALLERGY SERVICES, | § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIV. NO. 5:14-CV-00035-OLG |
| AMERICAN ACADEMY OF ALLERGY ASTHMA & IMMUNOLOGY, ET AL., | § § § | |
| Defendants. | § § | |

**DEFENDANTS PHADIA US INC. AND THERMO FISHER SCIENTIFIC INC.'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF WENDY WEISS, ESQUIRE**

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ...........................................1

II.     LEGAL STANDARD .................................................................................................2

III.    SUMMARY OF MS. WEISS'S ROLE IN THIS CASE...............................................3

IV.     MS. WEISS'S OPINIONS DO NOT CONSTITUTE LEGAL CONCLUSIONS. .............6

V.      MS. WEISS'S OPINIONS ARE RELEVANT. ......................................................10

VI.     MS. WEISS'S OPINIONS ARE RELIABLE.........................................................11

        A.      Ms. Weiss's Methodology and Opinions Are Consistent with Her
                Experience. ...............................................................................................11

        B.      Ms. Weiss's Opinions Are Within the Scope of Her Expertise..............................13

        C.      Ms. Weiss Does Not Improperly Rely on the OIG Opinion. ................................14

        D.      Ms. Weiss's Opinions Are Not Contrary to Legal Precedent.................................16

VII.    MS. WEISS'S OPINIONS ARE PROBATIVE, NOT PREJUDICIAL. ............................18

VIII.   CONCLUSION .......................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Askanasae v. Fatjo,*
  130 F.3d 657 (5th Cir. 1997) ................................................................................6

*Ballou v. Henri Studios,*
  656 F.2d 1147 (5th Cir. 1981) .............................................................................18

*Bauman v. Centex Corp.,*
  611 F.2d 1115 (5th Cir. 1980) .............................................................................15

*Brady v. Fort Bend County,*
  145 F.3d 691 (5th Cir. 1998) ...............................................................................18

*C.P. Interests, Inc. v. California Pools, Inc.,*
  238 F.3d 690 (5th Cir. 2001) .............................................................................7, 9

*Cazorla v. Koch Foods of Mississippi, LLC,*
  No. 3:10-CV135-DPJ-FKB, 2014 WL 11456088 (S.D. Miss. Sept. 22, 2014) .............7, 12, 16, 17

*City of Pomona v. SQM N. Am. Corp.,*
  750 F.3d 1036 (9th Cir. 2014) .............................................................................17

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ...............................................................................................2

*Evans v. Toyota Motor Corp.,*
  No. CIV.A. V-03-09, 2005 WL 3844071 (S.D. Tex. Sept. 2, 2005) .............................18

*GWTP Investments, L.P. v. SES Americom, Inc.,*
  No. 3:04-CV-1383-L, 2007 WL 7630459 (N.D. Tex. Aug. 3, 2007)...............................7

*Hanslester Network v. Shalala,*
  51 F.3d 1390 (9th Cir. 1995) ........................................................................ 16, 17

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137, 151 (1999) ......................................................................................2

*League of United Latin Am. Citizens (Lulac) v. Edwards Aquifer Auth.,*
  No. SA-12-CA-620-OG, 2014 WL 10762935 (W.D. Tex. Sept. 30, 2014) ...............9, 11

*Mathis v. Exxon Corp.,*
  302 F.3d 448 (5th Cir. 2002) ...................................................................... 2, 10, 11

*Rushing v. Kan. City S. Ry. Co.,*
  185 F.3d 496 (5th Cir. 1999) ...............................................................................14

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,*
  200 F.3d 358 (5th Cir. 2000) .................................................................................2

*United States ex rel. Barron v. Deloitte & Touche LLP,*
  No. SA-99-CA-1093-FB, 2008 WL 7136949 (W.D. Tex. Aug. 20, 2008).......................9

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, State of Miss.*,
   80 F.3d 1074 (5th Cir. 1996) ....................................................................................3, 13

*United States v. Alan Mackenzie*,
   No. CR-01-10350-DPPW (D. Mass. 2004).........................................................16

*United States v. Dotson*,
   817 F.2d 1127, 1132 *aff'd in pertinent part on reh'g*,
   821 F.2d 1034 (5th Cir. 1987) .......................................................... 6, 8, 9

*United States v. Pace*,
   10 F.3d 1106 (5th Cir. 1993) ...........................................................18

*Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987) ..............................13

*Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*,
   278 F.3d 523 (5th Cir. 2002) .............................................................6

*Wellogix, Inc. v. Accenture, L.L.P.*,
   716 F.3d 867 (5th Cir. 2013) ............................................................14

## Rules

Fed. R. Evid. 401 .................................................................................10

Fed. R. Evid. 403 .................................................................................18

Fed. R. Evid. 702 ...............................................................................2, 17

Fed. R. Evid. 703 .................................................................................15

Fed. R. Evid. 704(a)...............................................................................6

Pursuant to the Court's Order dated July 15, 2016 [Dkt. 289], Defendants Phadia US Inc. and Thermo Fisher Scientific Inc. (collectively, "**Phadia**") hereby submit this Response to Plaintiffs Academy of Allergy & Asthma in Primary Care and United Biologics, LLC d/b/a United Allergy Services' ("UAS") (collectively, "**Plaintiffs**") Motion to Exclude the Testimony of Wendy Weiss, Esquire [Dkt. 302] (the "**Motion**") and would respectfully show as follows:

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs' Motion seeks to exclude evidence that will assist the jury in deciding and understanding the extent of UAS's illegal conduct. By its counterclaim, Phadia will prove at trial that UAS tortiously interfered with Phadia's business relationships with primary care physicians by, among other conduct, offering and utilizing percentage-based contracts with primary care physicians that violate the Federal Anti-Kickback statute ("AKS"). Phadia has designated Ms. Wendy Weiss ("**Ms. Weiss**") as an expert in this case to assist the jury in making the determination as to whether UAS's contractual arrangements violated the AKS.

Plaintiffs' challenges to the admissibility of Ms. Weiss's testimony should be rejected. Plaintiffs primarily claim that Ms. Weiss, as a lawyer, must inherently be offering legal conclusions and should be excluded. However, under the applicable Fifth Circuit case law, Ms. Weiss is permitted to provide the jury with a rubric of the AKS as necessary to explain her analysis of the UAS contractual arrangements and other evidence at issue to the jury. Having nearly twenty years of experience as a government attorney focused on uncovering disguised kickbacks and enforcing federal healthcare laws, Ms. Weiss's testimony will assist and be helpful to the jury in deciding whether UAS engaged in illegal conduct.

Plaintiffs' attacks on the reliability of Ms. Weiss's testimony also lack merit. Serving as both an affirmative and rebuttal witness to Plaintiffs' designated AKS expert, Ms. Weiss has reviewed all

of the materials relied upon by Plaintiffs' AKS expert and reached independent opinions based on her review of the evidence. Ms. Weiss reviewed and relied upon materials typically relied upon by healthcare lawyers. At most, under applicable law, Plaintiffs' complaints about Ms. Weiss's reliability go to the weight and not admissibility of her testimony. Finally, Plaintiffs' challenge to Ms. Weiss's testimony as unfairly prejudicial fails because Ms. Weiss's testimony is relevant, probative, and Plaintiffs' concerns about prejudice are eliminated by the designation of their own AKS expert.

The Motion should be denied.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 requires that a testifying expert be qualified and that his or her testimony be reliable and relevant. FED. R. EVID. 702. The Court is familiar with the standards governing the admissibility of expert testimony under Federal Rule of Evidence 702 and the framework set out in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, not every *Daubert* factor will be applicable in every situation, and the Court has discretion to consider other factors it deems relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). "[W]hether *Daubert's* suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). Moreover, notwithstanding the dictates of *Daubert*, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, Adv. Comm. Notes (2000). Indeed, courts have warned that "[t]he *Daubert* analysis should not supplant trial on the merits." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citation omitted). "[T]he trial court's role as gatekeeper is not intended

to serve as a replacement for the adversary system." FED. R. EVID. 702, Adv. Comm. Notes (2000) (quoting *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

## III.    SUMMARY OF MS. WEISS'S ROLE IN THIS CASE

Ms. Weiss is an expert in the investigation and enforcement of healthcare laws, having spent nineteen years as an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Central District of California ("USAO") and serving as the Chief of the Los Angeles office for the last two years.[1] During her tenure at the USAO, Ms. Weiss focused on the civil prosecution of healthcare fraud under the False Claims Act ("FCA") in which a significant portion of the claims were premised on violations of the AKS.[2] Ms. Weiss personally evaluated, pursued, supervised, and settled numerous FCA cases premised on AKS violations.[3] As a result, Ms. Weiss has developed an expertise on the AKS and evaluating the types of contractual arrangements and evidence that would be considered problematic under the AKS from an enforcement perspective.[4] Aside from her previous experience as an AUSA, Ms. Weiss has developed further experience in the area of civil and criminal healthcare fraud by attending seminars and conferences relating to enforcement trends, including those focused on the AKS.[5]

---

[1] Expert Report of Wendy Weiss dated May 2, 2016 ("Weiss Report") ¶ 3, attached as Exhibit 1, fully incorporated herein by reference. *See also* Deposition of Wendy Weiss ("Weiss Dep."), excerpts attached as Exhibit 2, at 22-23.
[2] Weiss Report ¶ 3.  *See also* Weiss Dep. at 34 ("███████████████████████████████████████████████████████████████").
[3] Weiss Report ¶ 3.
[4] Weiss Dep. at 43-44.
[5] Weiss Report ¶ 4.

Since leaving the USAO, Ms. Weiss has continued to speak regularly at national conferences regarding healthcare fraud, compliance, parallel criminal and civil government investigations, and the AKS.[6]

Phadia has retained Ms. Weiss to provide both affirmative and rebuttal expert opinions. First, Phadia retained Ms. Weiss to provide testimony regarding a rubric of the AKS to assist the jury in understanding the types of arrangements that present risks and problems under the complicated AKS regime from an enforcement perspective. Based on her experience and review of the evidence in this case, Ms. Weiss will also provide opinions regarding whether certain of UAS's contractual arrangements generate remuneration that would be problematic under the AKS from an enforcement perspective. Although the ultimate question of whether UAS's contracts violate the AKS (and are therefore illegal) will be decided by the jury, Ms. Weiss's testimony will assist the jury in understanding the indicia that government enforcers will evaluate and consider when making such a determination for themselves. Given that the AKS is a complicated criminal statute, the violation of which lays the predicate for many civil claims (including a tortious interference claim), Ms. Weiss's expertise will be helpful to the jury to understand the circumstances under which the AKS can be implicated.

Second, Ms. Weiss has been designated to serve as a rebuttal witness to UAS's designated expert, Mr. Kevin McAnaney—a healthcare lawyer who will purportedly testify that UAS's contracts did not violate the AKS and that, in any event, UAS lacked the requisite "intent" to violate the AKS.[7] In November 2011, the Office of the Inspector General ("OIG") released Advisory Opinion

---

[6] Weiss Report ¶ 5; Weiss Dep. at 40.
[7] Reply Report of Wendy Weiss dated July 1, 2016 ("Weiss Rebuttal Report"), attached as Exhibit 3, fully incorporated herein by reference.

11-17 (the "OIG Opinion"), which determined that a nearly identical contract arrangement to the one utilized by UAS was "inherently problematic" under the AKS.[8] In December 2011, UAS directors consulted Kevin McAnaney because they "███████████████████████████████ ███████████████" deciding to retain Mr. McAnaney to write UAS a legal opinion letter (the "McAnaney Letter").[9] Mr. McAnaney explained that the purpose of his letter was so that UAS could "████████████████████████████████"[10] However, rather than directly address the problematic percentage-based contract, the McAnaney Letter predominately analyzed a new flat-fee contract model that UAS had not actually yet implemented in its business.[11]

In this case, UAS has retained Mr. McAnaney, as an expert, to testify that the McAnaney Letter and his newly issued expert report (the "McAnaney Report"), which seeks to defend the McAnaney Letter, both support the conclusion that UAS has not violated the AKS. As a rebuttal expert, Ms. Weiss will address the contentions set forth in both the McAnaney Letter and McAnaney Report.[12] Again, based on her experience and review of the evidence (including that pointed to by Mr. McAnaney), Ms. Weiss's rebuttal testimony will assist the jury in resolving the disputed fact issues related to whether UAS's contracts violate the AKS.

---

[8] OIG Opinion 11-17, attached as Exhibit 4.
[9] Deposition of Kevin McAnaney ("McAnaney Dep."), excerpts attached as Exhibit 5, at 53.
[10] McAnaney Dep. at 207.
[11] McAnaney Dep. at 47 ("████████████████████████████████████████ ████████████████████████"); id. at 54 (explaining that UAS told him that, in December 2011, all of its providers were contracted using the percentage-based contracts).
[12] Weiss Rebuttal Report ¶ 3.

## IV.     MS. WEISS'S OPINIONS DO NOT CONSTITUTE LEGAL CONCLUSIONS.

In the Motion, Plaintiffs principally seek to exclude Ms. Weiss on the grounds that her testimony constitutes inadmissible legal conclusions, relying on a broad brush contention that an expert witness lawyer must inherently be offering a legal conclusion. That is not the case here.

Although a lawyer serving as an expert witness may not testify as to "purely legal matters," that expert may "testify as to legal matters that involve questions of fact." *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002); *see also* Fed. R. Evid. 704(a) (explaining that an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact). Indeed, the Fifth Circuit has long recognized that "[m]erely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact." *Waco Int'l*, 278 F.3d at 533 (citing *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997)); *United States v. Dotson*, 817 F.2d 1127, 1132, *aff'd in pertinent part on reh'g*, 821 F.2d 1034 (5th Cir. 1987) (permitting IRS expert to summarize and analyze facts indicating willful tax evasion so long as he did not "directly embrace the ultimate question of whether [the defendant] did in fact intend to evade income taxes").

In *Waco International*, the Fifth Circuit found that the attorney expert's testimony was admissible, where his testimony assisted the jury in understanding the "issues an attorney typically investigates in determining whether to pursue an *ex parte* seizure order." 278 F.3d at 533 (explaining that "in order for the jury to understand the standard of care as applies to a trademark owner's conduct in seeking a seizure, the expert has to explain what the law is, because the standard of care is defined in part by the law"). To the extent there is any concern that the expert's testimony may mischaracterize the law or guide a jury to a certain conclusion, the Fifth Circuit has

explained that cross examination, countervailing evidence, and conscientious instructions by the trial court ensure that the jury's independent exercise of common sense is not supplanted. *Id.*; *see also C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 698 (5th Cir. 2001) (upholding district court's admission of testimony from attorney testifying as an expert).

Applying the Fifth Circuit's precepts, district courts within this Circuit have permitted attorney experts to testify where, like in this case, the expert's testimony did not instruct the jury on the ultimate conclusion of law. In *GWTP Investments, L.P. v. SES Americom, Inc.*, the district court refused to exclude a government contracts expert whose proposed testimony "details the statutes and regulations applicable to novation and offers her concerns about how they would apply to GWTP in its quest to novate the Verestar contacts." No. 3:04-CV-1383-L, 2007 WL 7630459, at *16 (N.D. Tex. Aug. 3, 2007). Analogizing the proposed testimony to that permitted in *Waco International*, the *GWTP* court explained, "[a]lthough Simmons's opinion necessarily addresses the law pertaining to novation and opines as to its possible effect on GWTP's chances of retaining Verestar's government contracts, such opinion does not cross the line into the province of the court or the jury." *Id.* Similarly, in *Cazorla v. Koch Foods of Mississippi, LLC*, the court permitted expert testimony regarding the analysis of the legal landscape on immigration issues to assist the jury in determining whether Defendants engaged in illegal discrimination. No. 3:10-CV135-DPJ-FKB, 2014 WL 11456088, at *4 (S.D. Miss. Sept. 22, 2014) (explaining that the experts did not "tell the trier of fact what to decide" on the ultimate issue).

Here, Ms. Weiss's proposed testimony fits under the guidelines permitted by Fifth Circuit law. To determine whether UAS tortiously interfered with Phadia's business relations with primary care physicians, the jury will be asked to decide whether UAS (1) engaged in illegal (or

independently tortious) conduct; and (2) acted intentionally or willfully in its interference.[13] As Phadia will show at trial, UAS has engaged in illegal conduct by having used and continuing to use illegal percentage-based contracts that violate the AKS by offering and providing disguised remuneration to primary care physicians in exchange for referrals reimbursed by federal healthcare programs. Ms. Weiss will testify about the legal framework of the AKS, including the types of arrangements or conduct that trigger scrutiny under the AKS. Based on her experience as an AUSA and having reviewed the evidence in this case, Ms. Weiss will also opine on how she would have evaluated evidence in AKS cases and whether the conduct at issue would likely have been viewed as problematic from an enforcement perspective.[14] However, Ms. Weiss will not testify that UAS engaged in illegal conduct or that UAS intentionally interfered with Phadia's business relationships. Those determinations are for the jury. Under *Dotson*, *Waco International* and its progeny, the Fifth Circuit permits this testimony.

Plaintiffs' argument to the contrary is unavailing. Plaintiffs' Motion relies upon overly broad propositions, mischaracterizations of Ms. Weiss's testimony, and out-of-context sound bites in an effort to show that Ms. Weiss is only offering legal conclusions. However, Plaintiffs disregard that Ms. Weiss's opinions never embrace the ultimate issue of whether UAS's contracts violate the AKS. And Plaintiffs ignore that Ms. Weiss provides other opinions helpful to resolve fact disputes, such as her opinions that UAS arrangements did not reflect fair market value, and her opinion that UAS marketing activities appear to encourage overutilization.[15]

---

[13] *See* UAS's Motion for Summary Judgment on Defendants Phadia US Inc. and Thermo Fisher Scientific Inc.'s Counterclaims [Dkt. 324] at 6.

[14] Weiss Dep. at 23-24.

[15] Weiss Report ¶¶ 12-13.

In support of their argument, Plaintiffs cite this Court's decision in *League of United Latin American Citizens (Lulac) v. Edwards Aquifer Authority*, but Ms. Weiss's expert reports and anticipated testimony in this case are distinguishable from the expert report excluded in *Edwards Aquifer*. No. CV SA-1 2-CA-620-OG, 2014 WL 10762935, at *2 (W.D. Tex. Sept. 30, 2014).[16] Unlike Dr. Wood's excluded report, Ms. Weiss's reports offer more than legal analysis of case law, statutes, and rules. In fact, Ms. Weiss's reports more closely resemble Dr. Ansolabehere's report, which the *Edwards Aquifer* Court admitted, acknowledging the report "contains some legal analysis" but "only to the extent necessary to establish a rubric for examining the facts." *Id.* Ms. Weiss takes a like approach. Ms. Weiss analyzes the AKS only to the extent necessary to provide the rubric for opining on the facts in this case and how those facts would be analyzed from the perspective of an experienced government enforcer of federal healthcare laws.

At bottom, Plaintiffs cannot show that Ms. Weiss's report, rebuttal report, and anticipated testimony should be excluded as legal conclusions. Particularly because Ms. Weiss's testimony can be subject to cross examination, and the rebuttal of Plaintiffs' own designated expert on the AKS, the Court has wide discretion to permit the testimony of Ms. Weiss. *See, e.g., Waco Int'l, Inc.*, 278 F.3d at 533; *Dotson*, 817 F.2d at 1132; *C.P. Interests*, 238 F.3d at 698.

---

[16] The decision in *United States ex rel. Barron v. Deloitte & Touche, LLP*, No. SA-99-CA-1093-FB, 2008 WL 7136949, at *6 (W.D. Tex. Aug. 20, 2008) is likewise distinguishable. In *Barron*, the proposed expert was "not an employee charged with enforcing, interpreting and distributing Medicaid rules and regulations" and sought to "provide expert testimony that the defendants actually violated these rules and regulations with respect to SHARS and Medicaid." *Id.* Quite the opposite in this case, Ms. Weiss has nearly twenty years of experience in interpreting and enforcing the healthcare laws (including the AKS), and Ms. Weiss does not opine that UAS actually violated the AKS.

### V.  MS. WEISS'S OPINIONS ARE RELEVANT.

Alternately, Plaintiffs argue that if Ms. Weiss's opinions are not legal conclusions, then her opinions must be irrelevant to whether UAS violated the AKS. Mot. at 7-8. Plaintiffs' relevance argument is based on the same erroneous black-and-white assumption that an attorney testifying as an expert witness must only offer a legal opinion or nothing at all. That is not the law, as demonstrated by the numerous Fifth Circuit courts cited above, holding that the testimony of expert witness attorneys were admissible to assist the trier of fact in understanding complicated legal regimes in particular industries.

The relevance bar is not high and easily met in this case. Expert testimony is relevant if it has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Mathis,* 302 F.3d at 460 (citing FED. R. EVID. 401). Indicia of AKS violations are not obvious or common sense. Rather, it takes training and experience to identify and understand the type of arrangements that government enforcers consider to be problematic under the AKS. Evidence of illegal remuneration can also be disguised as reductions, discounts or free items.[17] Based on her training and experience, Ms. Weiss's testimony will assist the jury in determining whether the UAS contracts at issue provide illegal remuneration.

For example, one of UAS's primary defenses to the claim that its contracts violated the AKS is to argue, through its own attorney expert, that by not paying its physician partners directly (but rather splitting up the proceeds from Medicare or Medicaid) UAS cannot be guilty of providing remuneration.[18] Ms. Weiss intends to testify that this position is contrary to the OIG

---

[17] Weiss Rebuttal Report ¶ 20.
[18] Expert Report of Kevin McAnaney ("McAnaney Report"), attached as Exhibit 6 ¶¶ 46-55.

and federal prosecutors' "

"[19] As Ms. Weiss explains, "

"[20] Ms. Weiss is uniquely qualified to analyze the facts relating to UAS's contractual

arrangements and put it in context for the jury to decide. *See League of United Latin Am. Citizens*

*(Lulac)*, 2014 WL 10762935, at *2. Her testimony is both relevant and not a legal conclusion.

## VI.     MS. WEISS'S OPINIONS ARE RELIABLE.

Plaintiffs' Motion also makes numerous criticisms on the reliability of Ms. Weiss's

opinions. Plaintiffs contend that Ms. Weiss (1) did not reach conclusions in line with her

experience; (2) offers opinions outside her expertise; (3) "improperly relied" on the OIG Opinion;

and (4) reaches opinions "contrary to legal precedent." *See* Mot. at 9-17. Reliability "is not a

question that can be answered by some generic test. The variability of type and purpose of the

particular testimony at issue requires flexibility in answering the reliability inquiry." *Mathis*, 302

F.3d at 460. None of Plaintiffs' contentions approach viable grounds for exclusion under

applicable law. At best, Plaintiffs' criticisms are cross-examination points that go to the weight of

the evidence, not the admissibility of Ms. Weiss's testimony.

### A.     Ms. Weiss's Methodology and Opinions Are Consistent with Her Experience.

Plaintiffs' Motion takes issue with the materials reviewed by Ms. Weiss, complaining that a

former prosecutor should have considered more evidence, such as conducting witness interviews

or gathering additional documentation. For several independent reasons, this argument fails.

---

[19] Weiss Rebuttal Report ¶ 19.
[20] Weiss Rebuttal Report ¶ 20.

First, Plaintiffs' contention is not factually accurate. While at the time of her deposition Ms. Weiss had reviewed a more narrow set of the evidence, since that time, Ms. Weiss has reviewed additional materials, including all of the materials relied upon by Plaintiffs' AKS expert Mr. McAnaney. Ms. Weiss's opinions have not changed, and she has provided a rebuttal report reaffirming her original opinions.[21] Having reviewed the same materials as Plaintiffs' attorney expert and those materials typically relied upon by healthcare lawyers, Ms. Weiss's methodology does not present grounds for exclusion. *See Cazorla*, 2014 WL 11456088, at *4 ("Both experts rely on the text of immigration laws, regulations, and executive guidance in tandem with their experience as immigration lawyers to form their opinions. These are the sources typically relied upon by lawyers in the field and are appropriate bases for these non-scientific opinions.").

Second, Plaintiffs' concern with Ms. Weiss's methodology once again relies on a mischaracterization of Ms. Weiss's role in this case. Plaintiffs argue that Ms. Weiss did not follow the exact same steps a prosecutor would follow in reaching her opinions; but, Ms. Weiss is not acting as a prosecutor in this case. She is not reaching a conclusion on whether UAS violated the AKS. Rather, Ms. Weiss is analyzing the facts and evidence based on her experience to provide opinions to the jury about how the contractual arrangements would be viewed from an experienced enforcement lawyer's perspective. As a result, to the extent Ms. Weiss did not follow the exact procedures she did at the USAO, it is inconsequential.

Finally, even if Ms. Weiss did not consider evidence that Plaintiffs contend is important, such critiques go to the weight of the evidence, not admissibility. Plaintiffs make much noise out of the fact that Ms. Weiss did not thoroughly review Plaintiffs' Complaint. Mot. at 10-11.

---

[21] Weiss Rebuttal Report ¶ 3.

However, Plaintiffs' Complaint primarily concerns Plaintiffs' antitrust claims—a part of this case to which Ms. Weiss is not offering any opinions. If Plaintiffs believe their Complaint undermines Ms. Weiss's opinions, they can cross-examine her about it at trial. That is the solution provided by Fifth Circuit law. *14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d at 1077 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

      **B.**     **Ms. Weiss's Opinions Are Within the Scope of Her Expertise.**

Plaintiffs also contend that Ms. Weiss offers opinions "outside of the scope her expertise," but only identify one such opinion: Ms. Weiss's opinion that primary care physicians receive a disproportionate share of the billings received for UAS's services under the UAS arrangements. Mot. at 11-12. This opinion, however, goes to the heart of Ms. Weiss's expertise. As a former AUSA specializing in healthcare fraud, Ms. Weiss has extensive experience in evaluating contractual arrangements to determine if disguised kickbacks are present in a particular arrangement.[22]

Moreover, Ms. Weiss's opinion is based on substantial evidence found inside UAS's and its private equity fund investor's (Serent Capital) files. Specifically, in internal communications with UAS, Serent Capital viewed the 40% revenue share with physicians as "███████████" to those physicians.[23] In Serent Capital's report on UAS's business model to investors, it explained that the business model should be attractive to physicians because it provides physicians with a "█

---

[22] Weiss Dep. at 145 (explaining that she has 20 years of experience in evaluating these types of cases).
[23] Weiss Report ¶ 36 (citing SERENT0001144-55, attached as Exhibit 7).

██████████████████████████████ [24] Having conducted due diligence into UAS's business model prior to investing tens of millions of dollars, Serent Capital explained to its investors that "████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ "[25] Ms. Weiss also analyzed UAS's own fair market value report from Hill Schwartz Spilker Keller LLC ("HSSK") and concluded that the report found the fair market value of the services being provided by the physicians to be substantially lower than the 40% of gross collections that physicians have received.[26] The fact that Ms. Weiss is not an expert in medicine or immunotherapy protocol is of no moment, especially because others that have analyzed the model similarly concluded that physicians receive a disproportionate share of the billings. Ms. Weiss's extensive experience in analyzing suspect contractual arrangements qualifies her to present this factual opinion. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876, 882 (5th Cir. 2013) (explaining that an expert does "not need 'firsthand knowledge or observation'") (citation omitted); *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (explaining that an expert is qualified "[a]s long as some reasonable indication of qualifications is adduced . . .").

### C.    Ms. Weiss Does Not Improperly Rely on the OIG Opinion.

Plaintiffs next complain that Ms. Weiss's opinions are unreliable because she relies upon the allegedly inadmissible OIG Opinion. This argument lacks merit both factually and legally.

---

[24] Weiss Report ¶ 36 (citing SERENT0001811-16, attached as Exhibit 8).
[25] Weiss Report ¶ 36 (citing SERENT0001811-16).
[26] Weiss Report ¶¶ 50-56.

First, Ms. Weiss does not base her opinions on the OIG Opinion, as Plaintiffs claim. At deposition, Ms. Weiss explained that she conducted an independent analysis from the OIG Opinion:



Contrary to Plaintiffs' arguments, as Ms. Weiss explained, the OIG Opinion corroborates her opinions but does not provide the foundation for her testimony.

Second, even if Ms. Weiss relied upon the OIG Opinion (which she did not), it is well-settled that Ms. Weiss would be entitled to do so, because the OIG Opinion is precisely the type of information that experts in her field review and rely upon. "In general whether facts relied on by an expert are in evidence, or even could be in evidence, is not relevant. The pertinent inquiry under Rule 703 is whether the facts are of a type reasonably relied on by experts in the particular field." *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) (citing FED. R. EVID. 703)). While technically only binding on the requestor, OIG Opinions are, "████████████████" relied upon by healthcare attorneys.[28] As Ms. Weiss explained, OIG Opinions "████████████████

_____

[27] Weiss Dep. at 75.
[28] Weiss Dep. at 68.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████"[29] Attorneys and their law firms write and publish articles about OIG opinions to warn clients about arrangements that the OIG currently believes are problematic.[30] Therefore, it would have been reasonable for Ms. Weiss to rely upon the OIG Opinion to form her opinions. *See Cazorla*, 2014 WL 11456088, at *4.

> **D.   Ms. Weiss's Opinions Are Not Contrary to Legal Precedent.**

Plaintiffs' motion contends that Ms. Weiss's opinions contradict legal precedent, pointing to the Ninth Circuit's decision in *Hanslester Network v. Shalala*, 51 F.3d 1390, 1401 (9th Cir. 1995) and an unpublished 2004 jury instruction from a non-binding District of Massachusetts case, *United States v. Alan Mackenzie*, No. CR-01-10350-DPPW (D. Mass. 2004). Mot. at 14-16. This argument is misplaced.

First, Plaintiffs' criticism that Ms. Weiss misstates the law is a red herring. It is the Court, not Ms. Weiss, who will ultimately decide the law. Rather, as explained above, Ms. Weiss presents testimony regarding the framework of the AKS and guidance promulgated by the OIG with respect to suspect arrangements under the AKS only to the extent necessary to provide context for her analysis into the UAS contractual arrangements at issue.

Second, Ms. Weiss's opinions are only contrary to Plaintiffs' self-serving interpretation of the law. The law is, of course, subject to varying interpretations. As explained in her rebuttal report, Ms. Weiss disagrees with Plaintiffs' and Mr. McAnaney's interpretation of what constitutes

---

[29] *Id.*
[30] Weiss Dep. at 74.

remuneration under the AKS (including their interpretation of the *Hanlester* case).[31] In fact, Ms. Weiss points out that numerous other experienced healthcare attorneys disagree with Plaintiffs' interpretation of *Hanlester*.[32] However, disagreement between Ms. Weiss and Mr. McAnaney regarding the interpretation of case law does not present grounds for excluding Ms. Weiss. *Cazorla*, 2014 WL 11456088, at *4 ("Finally, Plaintiffs note that the experts contradict each other at times. But any inconsistencies in their testimony goes to the weight of the evidence and not its admissibility.").

Under Fifth Circuit case law, to the extent one party complains that the other party's expert has mischaracterized the law, such attack goes to the proper weight, not admissibility of the testimony. *Waco Int'l*, 278 F.3d at 533 ("In any event, to the extent that Waco believed that Mr. Gordon had mischaracterized the law, Waco had an opportunity to cross-examine this witness and the jury is presumed to weigh the testimony accordingly."); *Cazorla*, 2014 WL 11456088, at *4 ("Plaintiffs' arguments really go to the accuracy of the experts' interpretation of the effects of the immigration laws, an issue more appropriately addressed on cross examination."); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir.) ("The test is not the correctness of the expert's conclusions but the soundness of his methodology, and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony.") (citation omitted).

---

[31] Weiss Rebuttal Report ¶¶ 30-34.
[32] *Id.* ¶ 31 (citing article from Hogan Lovells); McAnaney Dep. at 130-32 (considering attorneys at Hogan Lovells to be experienced healthcare attorneys).

### VII.   MS. WEISS'S OPINIONS ARE PROBATIVE, NOT PREJUDICIAL.

Finally, Plaintiffs seek for the Court to exclude Ms. Weiss's relevant and helpful testimony based on Rule 403. Mot. at 18-19. Under Rule 403, a court may exclude evidence that is otherwise relevant "if its probative value is substantially outweighed by the danger of . . . unfair prejudice." FED. R. EVID. 403. Because "[v]irtually all evidence is prejudicial or it isn't material" . . . the prejudice must be "unfair." *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981). "In determining whether evidence is properly excludable under Rule 403, district courts must be cognizant of the fact that, because Rule 403 operates to exclude relevant evidence, application of the rule 'must be cautious and sparing'." *Brady v. Fort Bend Cty.*, 145 F.3d 691, 715 (5th Cir. 1998) (quoting *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993)). For excluding expert testimony under Rule 403, "the court should consider as true the conclusions of the expert when striking the balance between the unfair prejudice of the testimony and its probative value." *Evans v. Toyota Motor Corp.*, No. CIV.A. V-03-09, 2005 WL 3844071, at *5 (S.D. Tex. Sept. 2, 2005) (citing *Ballou*, 656 F.2d at 1154).

For the same reasons that Ms. Weiss's testimony is both relevant and reliable, her opinions are admissible under Rule 403. As both an affirmative and rebuttal expert, Ms. Weiss's opinions are helpful to the jury, providing probative evidence on the question of whether UAS engaged in illegal conduct and a rebuttal voice to Mr. McAnaney. Ms. Weiss brings nearly twenty years of experience in evaluating contractual arrangements to the table and has formed opinions on the evidence in this case based on a reliable methodology. Plaintiffs cannot show any unfair prejudice; indeed, Plaintiffs have designated their own healthcare law expert to provide any rebuttal testimony they contend is needed. To the contrary, the Court's exclusion of Ms. Weiss's testimony

would leave Mr. McAnaney's biased, self-serving testimony regarding the AKS and UAS's business model unrebutted, likely creating unfair prejudice against Phadia.

## VIII.   CONCLUSION

For the reasons stated above, Phadia respectfully requests that the Court deny Plaintiffs' motion and grant Phadia all further relief to which it may be entitled.

Dated: August 22, 2016

Respectfully submitted,

VINSON & ELKINS LLP

/s/ James A. Reeder, Jr.
**James A. Reeder, Jr.**
Texas Bar No. 16695010
Federal Bar No. 12381
**Christopher V. Popov**
Texas Bar No. 24032960
Federal Bar No. 88136
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:  713-758-2202
Facsimile:  713-615-5033
E-mail: jreeder@velaw.com;
cpopov@velaw.com

**Liane Noble**
Texas Bar No. 24079059
Federal Bar No. 2329197
**Michelle Arishita**
Texas Bar No. 24092048
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Telephone: 512-542-8505
Facsimile: 512-236-3234
E-mail: lnoble@velaw.com;
marishita@velaw.com

**ATTORNEYS FOR DEFENDANTS
PHADIA US INC. AND THERMO
FISHER SCIENTIFIC INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically in compliance with Local Rule CV-5(a). As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax on this 22nd day of August, 2016.

*/s/ Michelle K. Arishita*
Michelle K. Arishita