IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE AND UNITED BIOLOGICS, LLC D/B/A UNITED ALLERGY SERVICES | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  5:14-CV-35-OLG |
| ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.; TONYA WINDERS; PHADIA US INC.; AND THERMO FISHER SCIENTIFIC INC. | § § § § § § | |
| Defendants. | § § § | |

**PLAINTIFFS' REQUEST FOR JURY CHARGE AND PROPOSED VERDICT FORM**

Plaintiffs Academy of Allergy & Asthma in Primary Care ("AAAPC") and United Biologics, LLC d/b/a United Allergy Services ("UAS") (collectively, "Plaintiffs") respectfully submit the attached Request for Jury Charge with Instructions, Definitions and Questions, and requests that the Court submit and include in its charge to the jury the instructions, definitions, and questions set forth herein.

Because the proposed charge is submitted in advance of the presentation of evidence, Plaintiffs reserve the right to submit additional instructions, definitions, and questions as may be necessary in the trial of the case.  By submitting this proposed charge, Plaintiffs do not intend to waive the right to request additions or modifications to this charge in light of the evidence at trial or legal rulings by the Court.

Dated: February 16, 2018

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:    /s/ Casey Low
         Casey Low
         Texas Bar No. 24041363
         Benjamin Bernell
         Texas Bar No. 24059451
         Elizabeth Kozlow Marcum
         Texas Bar No. 24078801
         401 Congress Ave., Suite 1700
         Austin, Texas 78701
         Phone: (512) 375-4900
         Fax: (512) 375-4901
         casey.low@pillsburylaw.com
         ben.bernell@pillsburylaw.com
         liz.marcum@pillsburylaw.com
         **ATTORNEYS FOR PLAINTIFFS**
         **AAAPC & UAS**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and the Local Rules, I hereby certify that all counsel of record who have appeared in this case were served on February 16, 2018 with a copy of the foregoing via electronic mail.

/s/ *Casey Low*
         Casey Low

# TABLE OF CONTENTS

**Page**

**Initial Jury Instruction No. 1** *Instructions for Beginning of Trial* ...............................................1

**Initial Jury Instruction No. 2** *Preliminary Instructions to Jury* ...................................................3

**Initial Jury Instruction No. 3** *Plaintiffs' Proposed Definitions* ...................................................5

**Initial Jury Instruction No. 4** *Potential Pattern Instructions During or At Conclusion of Trial* .............................................................................................................6

**Initial Jury Instruction No. 5** *Pattern Jury Charge Instructions* ...............................................10

**Antitrust Jury Instruction 1** *Sherman Act and Texas Act Purpose* ...........................................13

**Antitrust Jury Instruction 2** *Sherman Act Section 1* ...................................................................14

**Antitrust Jury Instruction 3** *Sherman Act Section 1 Definition of Existence of Contract, Combination or Conspiracy* ........................................................................................15

**Antitrust Jury Instruction 4** *Sherman Act Section 1 Participation and Intent* ..........................17

**Antitrust Jury Instruction 5** *Sherman Act Corporations* ...........................................................18

**Antitrust Jury Instruction 6** *Sherman Act Use of Membership Organizations to Commit Antitrust Violations* ......................................................................................................189

**Antitrust Jury Instruction 7** *Sherman Act  Liability of Association for Acts of an Agent* .........................................................................................................................................20

**Antitrust Jury Instruction 8** *Sherman Act Section 1 Group Boycott - Elements of Per se Unlawful Horizontal Concerted Refusal to Deal* ..............................................................21

**Antitrust Jury Instruction 9** *Sherman Act Section 1 Allocation of Product Markets* ..............223

**Antitrust Jury Instruction 10** *Texas Act Section 15.05(a) Elements* .........................................25

**Antitrust Jury Instruction 11** *Sherman Act and Texas Act - Causation and Damages Business or Property* .................................................................................................246

**Antitrust Jury Instruction 12** *Sherman Act and Texas Act - Causation and Damages Damages for Competitors - Lost Profits* .................................................................257

**Tort Jury Instruction 1** *Intentional Interference With Existing Contracts and Prospective Contractual or Business Relations* .............................................................................26

i

**Tort Jury Instruction 2** *Causation and Damages* ........................................................................27

**Tort Jury Instruction 3** *Exemplary Damages* ...........................................................................28

**Initial Jury Instruction No. 1**
*Instructions for Beginning of Trial*

Members of the jury panel, if you have a cell phone, PDA, Blackberry, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this

country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

SOURCE

Committee on Pattern Jury Instructions, District Judges Association – Fifth Circuit, PATTERN JURY INSTRUCTIONS (CIVIL CASES) ("Fifth Circuit Jury Instructions"), 1.1.

**Initial Jury Instruction No. 2**
*Preliminary Instructions to Jury*

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiffs will present their case through witness testimony and documentary or other evidence. Next, the defendants will have an opportunity to present their case. The plaintiffs may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments.

It is now time for the opening statements.

SOURCE

Fifth Circuit Jury Instructions, 1.2.

**Initial Jury Instruction No. 3**
*Plaintiffs' Proposed Definitions*

Throughout this charge, the following terms are defined to mean:

1. "AAAPC" refers to plaintiff Academy of Allergy & Asthma in Primary Care."

2. "UAS" refers to plaintiff United Biologics, LLC d/b/a United Allergy Services.

3. "Plaintiffs" refers collectively to both named plaintiffs in this case, AAAPC and UAS.

4. "AANMA" refers to defendant Allergy and Asthma Network/Mothers of Asthmatics, Inc.

5. "Phadia" or "Thermo Fisher" refers collectively to Phadia U.S. Inc. and Thermo Fisher Scientific Inc.

6. "Defendants" refers collectively to all of the previously named and current defendants in this case, including American Academy of Allergy, Asthma & Immunology; American College of Allergy, Asthma & Immunology; Dallas Allergy and Asthma Center, P.A.; Joint Council of Allergy, Asthma & Immunology; Lyndon E. Mansfield M.D., P.A., a Professional Association; PSF, PLLC; Donald Aaronson, M.D.; Gary Gross, MD; Lyndon Mansfield, MD; James Sublett, MD; David Weldon, MD; Allergy and Asthma Network/Mothers of Asthmatics, Inc.; Tonya Winders; James Wallen; Phadia US Inc.; Atlanta Allergy & Asthma Clinic, P.A.; Stanley Fineman, MD; and Thermo Fisher Scientific Inc. The only remaining defendants in this case are AANMA and Tonya Winders. Even though certain parties are no longer involved in this trial, you may consider the actions of those parties and their interaction with the parties remaining in this case to resolve the questions submitted to you.

**Initial Jury Instruction No. 4**
*Potential Pattern Instructions During or At Conclusion of Trial*

Some or all of the following instructions may be required depending on the conduct of the trial:

*First recess.*  We are about to take our first break in this trial. Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors. If anyone approaches you and tries to talk to you about the case, advise me about it immediately.  Do not read or listen to any news reports of the trial or use any technology tools to do independent research. Remember to keep an open mind until all the evidence has been received. Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.

SOURCE

Fifth Circuit Jury Instructions, 2.1

*Stipulated testimony.*  A "stipulation" is something that the attorneys agree is accurate. When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony.

Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

SOURCE

Fifth Circuit Jury Instructions, 2.2

*Stipulations of fact.*  A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

SOURCE

Fifth Circuit Jury Instructions, 2.3

*Judicial notice.*  You must accept as proved facts of which the court takes judicial notice. The court has taken judicial notice that [state the facts].

SOURCE

Fifth Circuit Jury Instructions, 2.4

*Discontinuance as to some parties*.  Certain parties are no longer involved in this trial as all of the Defendants except AANMA and Tonya Winders have settled with the Plaintiffs. As jurors, it is your duty to consider the issues among the remaining parties.  As I noted previously, even though certain parties are no longer involved in this trial, you may consider the actions of those parties and their interaction with the parties remaining in this case to resolve the questions submitted to you.

SOURCE

Fifth Circuit Jury Instructions, 2.5 (modified); *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984).

*Limiting instruction*.  When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

SOURCE

Fifth Circuit Jury Instructions, 2.6

*Charts and summaries*.  Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

SOURCE

Fifth Circuit Jury Instructions, 2.7

*Demonstrative evidence*.  Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

SOURCE

Fifth Circuit Jury Instructions, 2.8

*Witness not called*.  [Name of witness] was available to both sides. Plaintiff/Defendant [name] cannot complain that [name of witness] was not called to testify, because either Plaintiff or Defendant [name] could have called [name of witness].

SOURCE

Fifth Circuit Jury Instructions, 2.9

_Similar acts._  Evidence that an act was done at one time or on one occasion is not any evidence or proof whatsoever that the act was done in this case.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing [name]'s [motive], [opportunity], [intent], [knowledge], [plan], [identity], or [absence of mistake or accident], which is at issue in this case.

Such evidence may not be considered for any other purpose whatsoever. You may not use the evidence to consider or reflect [name]'s character.

SOURCE

Fifth Circuit Jury Instructions, 2.10


_Impeachment of witness's inconsistent statements._   In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

SOURCE

Fifth Circuit Jury Instructions, 2.11

_Deposition testimony_.   Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be shown to you today. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

SOURCE

Fifth Circuit Jury Instructions, 2.13


_Bias – corporate party involved_.   Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

SOURCE

Fifth Circuit Jury Instructions, 2.16

**Initial Jury Instruction No. 5**
*Pattern Jury Charge Instructions*

<u>Jury Charge</u>

Members of the jury,

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

SOURCE

Fifth Circuit Jury Instructions, 3.1


<u>*Burden of Proof: Preponderance of the Evidence*</u>.  Plaintiffs have the burden of proving their case by a preponderance of the evidence.  To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiffs have failed to prove any element of their claim by a preponderance of the evidence, then they may not recover on that claim.

SOURCE

Fifth Circuit Jury Instructions, 3.2

10

*Evidence*.   The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence.   Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

SOURCE

Fifth Circuit Jury Instructions, 3.3


*Witnesses*.  You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

SOURCE

Fifth Circuit Jury Instructions, 3.4

*Expert Witnesses*.  When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

SOURCE

Fifth Circuit Jury Instructions, 3.5

11

_Duty to deliberate._  It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

SOURCE

Fifth Circuit Jury Instructions, 3.7

12

**Antitrust Jury Instruction 1**
*Sherman Act and Texas Act*
*Purpose*

Plaintiffs claim that Defendants violated the federal Sherman Act and the Texas Free Enterprise and Antitrust Act, which I will refer to as the "Sherman Act" and the "Texas Act." The purpose of the Sherman Act and the Texas Act are to preserve free and unfettered competition in the marketplace. The Sherman Act and the Texas Act rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

SOURCE

ABA Section of Antitrust Law, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES (2016) ("ABA Jury Instructions"), Sherman Act – General - Instruction 1 at p. 1 (modified).

**Antitrust Jury Instruction 2**
*Sherman Act Section 1*

Plaintiffs challenge AANMA and Tonya Winders' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following:

(1) the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2) that the contract, combination, or conspiracy unreasonably restrains trade;

(3) that the restraint affects interstate or foreign commerce; and

(4) that the restraint caused Plaintiffs to suffer an injury to their business or property.

SOURCE

ABA Jury Instructions, Sherman Act – General – Section 1, Instruction 2 at p. 2.

**Antitrust Jury Instruction 3**
*Sherman Act Section 1*
*Definition of Existence of Contract, Combination or Conspiracy*

Plaintiffs allege that AANMA and Tonya Winders participated in a conspiracy with one or more persons or entities to restrain trade in the markets for allergy testing and immunotherapy.  Plaintiffs allege the conspiracy included a group boycott of the services of primary care physicians and UAS and an agreement to allocate who may sell allergy testing and immunotherapy products.  A conspiracy is an agreement by two or more persons to restrain trade, in this instance services in the markets for allergy testing and allergen immunotherapy.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

> **(1)**  that the alleged conspiracy existed; and

> **(2)**  that the defendant knowingly became a member of that conspiracy.  To act knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where different businesses or persons separately accept invitations to engage in a boycott of a product or service or separately agree to allocate who may sell a product or service. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have

associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

SOURCE

ABA Jury Instructions, Sherman Act – Section 1 – A Contract, Combination or Conspiracy Instruction 1 at p. 13 (modified).

**Antitrust Jury Instruction 4**
*Sherman Act Section 1*
*Participation and Intent*

Before you can find that a defendant was a member of the conspiracy alleged by Plaintiffs, the evidence must show that defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

Once you have found that a defendant is a member of a conspiracy, he, she, or it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

Although a defendant who was a member of a conspiracy may withdraw from and abandon the conspiracy, that defendant is still liable with all other coconspirators for any illegal acts committed by that defendant or by any coconspirator while that defendant was a member of the conspiracy up until the time of that defendant's withdrawal from the conspiracy.

SOURCE

ABA Jury Instructions, Sherman Act - Section 1 – Instruction 4 excerpts, at p. 21 (modified).

**Antitrust Jury Instruction** 5
*Sherman Act*
*Corporations*

Some of the Defendants in this case are corporations, including AANMA and Thermo Fisher.

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

SOURCE

ABA Jury Instructions, Sherman Act - Section 1 –Instruction 3, at 19 (modified).

**Antitrust Jury Instruction 6**
*Sherman Act*
*Use of Membership Organizations to Commit Antitrust Violations – Per Se Cases*

Businesses that are actual or potential competitors, such as Plaintiff AAAPC and certain of the Defendants here, may lawfully form into trade, industry, or professional associations or similar organizations ("trade associations") to advance common interests, and may communicate and meet with one another in furtherance of lawful trade association activities.  One of the Defendants remaining in this case, AANMA, is a trade association.  In addition, several of the other former Defendants are trade associations or are members, directors and/or officers of one or more those trade associations.

Trade associations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry. Trade associations, however, may not be used by members to commit violations of the antitrust laws. For example, a trade association cannot be used as a vehicle by its members to organize or facilitate a group boycott of the members' actual potential competitors or to agree to assist in allocating product markets between actual or potential competitors.

SOURCE

ABA Jury Instructions, Sherman Act – Section 1 – Horizontal Non-Price Restraints Instruction 8, at p.51.

**Antitrust Jury Instruction 7**
*Sherman Act*
*Liability of Association for Acts of an Agent*

Like a corporation, a trade or professional association is a legal entity that can be found liable for the unlawful acts of its agents. To find the association liable, you must find that the agent or agents acted with "apparent authority," as I defined it earlier.

For a trade association to be responsible for the acts of one of its agents acting with apparent authority, it is not necessary that the trade association specifically authorize the agent to commit those acts. Nor is it necessary that the trade association ratify or endorse the agent's actions. Nor is it necessary that the association itself have knowledge of the actions. Rather, the trade association is legally bound by the acts of its agent performed with apparent authority.

SOURCE

ABA Jury Instructions, Sherman Act – Section 1 – Horizontal Non-Price Restraints Instruction 12, at p. 62.

20

**Antitrust Jury Instruction 8**
*Sherman Act Section 1*
*Group Boycott - Elements of Per se Unlawful Horizontal Concerted Refusal to Deal*

Plaintiffs have alleged that AANMA and Tonya Winders and other persons or businesses have violated the Sherman Act and Texas Act by agreeing not to deal with Plaintiffs.  A person or business has the right to deal, or refuse to deal, with whomever it likes, as long as it makes that decision on its own. The Sherman Act, however, prohibits two or more persons or businesses from agreeing with one another not to purchase a product or service from another person or business, or to deprive a person or business of the ability to sell a product or service.   Where certain circumstances are shown to exist, it is a situation sometimes referred to as a "group boycott."

To prevail on a group boycott claim against AANMA and Tonya Winders, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

> (1) AANMA or Tonya Winders and one or more other persons or businesses refused to deal with UAS and primary care physicians practicing allergy skin testing or immunotherapy or persuaded or coerced other persons or entities to deny relationships that UAS and these physicians need in the competitive struggle;

> (2) the refusal to deal was pursuant to an agreement between AANMA or Tonya Winders and one or more other persons or businesses;

> (3) at least two of the parties to the agreement are direct competitors;

> (4) the refusal to deal disadvantaged UAS and primary care physicians by denying them access to a supply of product, a facility, or a market or a service necessary for Plaintiffs to compete effectively;

> (5) the refusal to deal occurred in or affected interstate commerce; and

> (6) that Plaintiffs were injured in their business or property because of the refusal to deal.

If you find that the evidence is insufficient to prove any one or more of these elements as to a defendant, then you must find for that defendant and against Plaintiffs on Plaintiffs' group boycott claim. If you find that the evidence is sufficient to prove all six elements as to a defendant, then you must find for Plaintiffs and against that defendant on Plaintiffs' group boycott claim.

SOURCE

ABA Jury Instructions, Sherman Act – Section 1 – Horizontal Non-Price Restraints Instruction 5, at p. 44 (modified); *NYNEX Corp. v. Discon, Inc.* 525 U.S. 128, 135 (1998); *United States v. MMR Corp. (La.)*, 907 F.2d 489, 498 (5th Cir. 1990) ("If there is a horizontal agreement between A and B, there is no reason why others joining that conspiracy must be competitors."); Jury Instructions in *MM Steel LP v. Reliance Steel & Aluminum Co.*, S.D. Tex. Case No. 12-cv-01227, Dkt. 518 at p. 7 (verdict affirmed in part and reversed in part in *MM Steel v. JSW Steel*, 806 F.2d 835 (5th Cir. 2015).

**Antitrust Jury Instruction 9**
*Sherman Act Section 1*
*Allocation of Product Markets*

In addition to a group boycott claim, Plaintiffs also claim that Defendants violated the Sherman Act by agreeing to allocate product markets between allergists, including AANMA members, and Thermo Fisher, who are competitors. Allocate means to limit, divide up, or not to compete.  A business has the right to select on its own the products that it will manufacture or sell. Likewise, a business may decide not to make or sell a product, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act, however, prohibits agreements between competitors that allocate product markets.

A conspiracy to allocate product markets is an agreement between two or more competitors to agree not to compete in making or selling a product that they would have otherwise competed in making or selling. By way of example, this includes an agreement by two or more competitors that a product sold by one of them will not be sold by the other, to confine their manufacturing efforts to particular or different products, or to require one to discontinue sales or production of a product that the other will continue to sell.

Plaintiffs allege that instead of competing against each other, Defendants agreed that Thermo Fisher would not to enter the immunotherapy market in exchange for AANMA and allergists promoting allergy blood testing as the exclusive method of testing at the primary care level. Plaintiffs allege that Defendants therefore allocated the markets for allergy testing and immunotherapy among themselves, with an agreement not to compete against each other, and to the exclude other competitors, including primary care physicians and UAS.

To prevail on this claim against a defendant, Plaintiffs must prove, as to that defendant, each of the following elements by a preponderance of the evidence:

(1) Thermo Fisher and allergists are competitors or potential competitors;

(2) AANMA entered into an agreement among these competitors;

(3) AANMA and these competitors agreed Thermo Fisher would not compete in the immunotherapy market in exchange for AANMA and allergists promoting allergy blood testing as the exclusive form of testing at the primary care level;

(4) the agreement occurred in or affected interstate commerce; and

(5) Plaintiffs were injured in their business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against Plaintiffs on Plaintiffs' product market allocation claim. If you find that the evidence is sufficient to prove all five elements as to that defendant, then you must find for Plaintiffs and against that defendant on Plaintiffs' product market allocation claim.

SOURCE

ABA Jury Instructions, Sherman Act – Section 1 – Horizontal Non-Price Restraints - Instruction 3, at p. 40 (modified).

**Antitrust Jury Instruction 10**
*Texas Act Section 15.05(a)*
*Elements*
Like Section 1 of the Sherman Act, Section 15.05(a) of the Texas Free Enterprise and Antitrust Act prohibits every contract, combination or conspiracy in restraint of trade or commerce among the several States, or with foreign nations.  Because Section 15.05(a) of the Texas Act largely mirrors Section 1 of the Sherman Act, the elements to prove a violation of Section 15.05(a) are the same as the elements to prove a violation of Section 1, with one exception:  to prove a violation of Section 15.05(a), Plaintiffs need not prove that Defendants' conduct occurred in or affected interstate commerce.

SOURCE

Jury Instructions in *Abraham & Veneklasen Joint Venture v. American Quarter Horse Ass'n*, N.D. Tex. Case No. 2:12-cv-103-J, Dkt. 121 at p.12, *affirmed in part and reversed in part on other grounds*, 776 F.3d 321 (5th Cir. 2015).

**Antitrust Jury Instruction 11**
*Sherman Act and Texas Act - Causation and Damages*
*Business or Property*

AAAPC and UAS must each establish that the injury it claims to have suffered was an injury to its "business or property."  The term "business" includes any commercial interest or venture. AAAPC and UAS have been injured in their "business" if you find that either have suffered injury to any of its commercial interests or enterprises as a result of Defendants' alleged antitrust violation. The term property includes anything of value AAAPC or UAS owns, possesses, or in which it has a protectable legal interest. AAAPC and UAS has been injured in its property if you find that either has lost money as a result of Defendants' alleged antitrust violation.

SOURCE

ABA Jury Instructions, Sherman Act – Causation and Damages Instruction 2, at p. 303 (modified).

**Antitrust Jury Instruction 12**
*Sherman Act and Texas Act - Causation and Damages*
*Damages for Competitors - Lost Profits*

AAAPC and UAS claim that they were harmed because they lost profits as a result of AANMA and Tonya Winders' alleged antitrust violation. If you find that AANMA or Tonya Winders committed an antitrust violation on Plaintiffs' group boycott claim or its product allocation claim, and that this violation caused injury to AAAPC or UAS, you now must calculate the profits, if any, that AAAPC or UAS lost as a result of the antitrust violation and the future lost profits, if any, that AAAPC or UAS lost as a result of Defendants' antitrust violation.

To calculate lost profits, you must calculate net profit: the amount by which AAAPC or UAS's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. You may calculate the net profit by using the Before-After measure.

AAAPC and UAS has proposed to calculate the net profits they would have earned if there had been no antitrust violation by showing evidence of their actual net profits in a period before the antitrust violation. If you find that the earlier period is a reliable guide to estimate what AAAPC and UAS's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate AAAPC and UAS's lost profits by comparing (a) AAAPC and UAS's actual net profits in the earlier period with (b) AAAPC and UAS's actual net profits (or loss) thereafter.

To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that AAAPC and UAS would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation. In making this determination, you must consider the various uncertainties that could affect the future success of AAAPC and UAS's business, such as general market or economic conditions, lawful competition AAAPC and UAS would face in the future, their management of business, changes in technology or other business conditions, and other factors affecting its future performance.

Certain testimony has been given in this case by experts relating to lost profits and future lost profits. An expert is someone who is specially qualified by experience or training and possesses knowledge on matters not common to jurors in general. In a trial, an expert is permitted to give his or her opinions regarding such matters. The testimony of experts is to be considered like any other testimony, is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances. Its weight and value are questions for you.

SOURCE

ABA Jury Instructions, Sherman Act – Causation and Damages Instruction 8, at p. 315; Instruction 9, at p. 317;   Instruction 13, at p. 323 (modified).

25

**Tort Jury Instruction 1**

*Intentional Interference With Existing Contracts and Prospective Contractual or Business Relations*

Plaintiffs allege that Defendants' conduct constituted intentional interference with existing agreements and prospective contractual and business relations between AAAPC and its members and industry sponsors, and between UAS and physicians and practice groups. Interference is intentional if committed with the desire to interfere with Plaintiffs' contract or prospective contractual or business relations or with the belief that the interference is substantially certain to result.

Plaintiffs also allege that AANMA and Tonya Winders were part of a civil conspiracy with one or more other person or entity to commit such an intentional interference. To be part of a conspiracy, AANMA or Tonya Winders and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Plaintiffs. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

SOURCE

Texas Pattern Jury Charges – Civil, § 106.1, 106.3; 109.1.

**Tort Jury Instruction 2**
*Causation and Damages*

If you find that AANMA or Tonya Winders intentionally interfered with existing contracts and prospective contractual and business relations of AAAPC or UAS, or conspired with another person or entity to do so, you will be asked to determine damages proximately caused by such interference.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In assessing damages, you may consider the following elements of damages, if any, and none

other.

> (a)     Lost Profits - The difference in amount of profits that AAAPC and UAS would have realized as compared to the amount of profits AAAPC and UAS actually realized from the prospective contracts in question.

> (b)     Remedial Damages - The reasonable and necessary cost to AAAPC and UAS to repair the prospective contractual relationships in question.

Do not add any amount for interest on damages, if any.

SOURCE

Texas Pattern Jury Charges – Civil, §§ 100.12, 115.4, 115.22.

**Tort Jury Instruction 3**
*Exemplary Damages*

Plaintiffs also seek to recover exemplary damages for AANMA or Tonya Winders' alleged interference with Plaintiffs' existing contracts and for AANMA or Tonya Winders' alleged interference with Plaintiffs' prospective business relations.

You may award exemplary damages if you find by clear and convincing evidence that the harm to Plaintiffs resulted from defendants' malice.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.   "Malice" means a specific intent by the defendant in question to cause substantial injury or harm to AAAPC or UAS.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are--

1. The nature of the wrong.

2. The character of the conduct involved.

3. The degree of culpability of defendants.

4. The situation and sensibilities of the parties concerned.

5. The extent to which such conduct offends a public sense of justice and propriety.

6. The net worth of defendants.

SOURCE

Texas Pattern Jury Charges – Civil, §§ 115.37B, 115.38.

**[PROPOSED] VERDICT FORM**

## SPECIAL VERDICT FORM

We, the jury, present our Answers to the Questions submitted by the Court, to which we have all agreed:

## QUESTION NO. 1:

**Did AANMA or Tonya Winders participate in a conspiracy to restrain trade in the market for allergy testing or immunotherapy that caused injury to Plaintiffs?**

**Answer "Yes" or "No" as to each:**

**ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.**

**_____ YES          _____ NO**

**TONYA WINDERS**

**_____ YES          _____ NO**

If you answered "Yes" to Question 1 as to any defendant, then answer Question 2. Otherwise do not answer Question 2 and proceed to Question 3.

30

**QUESTION NO. 2:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for the injury to their business or property that you have found in response to Question 1?

Answer separately in dollars and cents for damages, if any.

**1.** **Lost profits sustained in the past.**

**Answer:** _____ **for AAAPC**

_____ **for UAS**

2. **Lost profits that, in all reasonable probability, will be sustained in the future.**

**Answer:** _____ **for AAAPC**

_____ **for UAS**

**QUESTION NO.  3:**

      **Did AANMA or Tonya Winders intentionally interfere with one or more existing or prospective business relations between AAAPC and its members or industry sponsors?**

Answer "Yes" or "No" as to each:

      **ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.**

        _____ YES      _____ NO

      **TONYA WINDERS**

        _____ YES      _____ NO

**QUESTION NO. 4:**

        **Did AANMA or Tonya Winders participate in a conspiracy to intentionally interfere with one or more existing or prospective business relations between AAAPC and its members or industry sponsors that damaged AAAPC?**

        **Answer "Yes" or "No" as to each defendant:**

**ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.**

        **_____ YES       _____ NO**

**TONYA WINDERS**

        **_____ YES       _____ NO**

If you answered "Yes" to either Questions 3 or 4, then answer Question 5.  Otherwise, do not answer Question 5 and proceed to answer Question 6.

**<u>QUESTION NO. 5</u>:**

**What sum of money, if any, if paid now in cash, would fairly and reasonably compensate AAAPC for its damages, if any, proximately caused by such interference ?**

**Answer separately in dollars and cents for damages, if any.**

**3.  Lost profits sustained in the past.**

   **Answer:**    _____

4.  **Lost profits that, in all reasonable probability, will be sustained in the future.**

   **Answer:**    _____

34

**QUESTION NO.  6:**

Did AANMA or Tonya Winders intentionally interfere with one or more contract or prospective contracts or business relations between UAS and physicians or practice groups?

Answer "Yes" or "No" as to each defendant:

**ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.**

_____ YES        _____ NO

**TONYA WINDERS**

_____ YES        _____ NO

**QUESTION NO. 7:**

Did AANMA or Tonya Winders participate in a conspiracy to intentionally interfere with one or more existing or prospective contracts or business relations between UAS and physicians and practice groups that damaged UAS?

Answer "Yes" or "No" as to each defendant:

**ALLERGY AND ASTHMA NETWORK/MOTHERS OF ASTHMATICS, INC.**

_____ YES        _____ NO

**TONYA WINDERS**

_____ YES        _____ NO

If you answered "Yes" to either Question 6 or 7, then answer Question 8.  Otherwise, do not answer Question 8 and proceed to answer Question 9.

## QUESTION NO. 8:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate UAS for the damages, if any, proximately caused by such interference?

Answer separately in dollars and cents for damages, if any.

1. **Lost profits sustained in the past.**

   **Answer:**   _____

2. **Lost profits that, in all reasonable probability, will be sustained in the future.**

   **Answer:**   _____

If you answered "Yes" to Question 4, then answer the following questions.  Otherwise, do not answer the following question and proceed to answer Question 12.

**QUESTION NO. 9:**

     **Do you find by clear and convincing evidence that the harm to AAAPC resulted from malice of AANMA or Tonya Winders?**

     **AANMA:  _____**

     **Tonya Winders:  _____**


     **If yes, what sum of money, if any, if paid now in cash, should be assessed against defendants and awarded to AAAPC as exemplary damages?**

     **AANMA:  _____**

     **Tonya Winders:  _____**

If you answered "Yes" to Question 8, then answer the following questions.  Otherwise, do not answer the following questions.

**QUESTION NO. 10:**

Do you find by clear and convincing evidence that the harm to UAS resulted from malice of AANMA or Tonya Winders?

AANMA:  _____

Tonya Winders:  _____

If yes, what sum of money, if any, if paid now in cash, should be assessed against defendants and awarded to UAS as exemplary damages?

AANMA:  _____

Tonya Winders:  _____

Date  _____

_____
                                Presiding Juror


_____
                Juror

_____
                Juror

_____
                Juror

_____
                Juror

_____
                Juror

_____
                Juror

_____
                Juror